CHARLESTOWN HOMEOWNERS AS-
SOCIATION, INC., Appellants,

v.

Frank LaCOKE et al., Appellees.

No. 18254.

Court of Civil Appeals of Texas,
Dallas.

Feb. 28, 1974.

Rehearing Denied April 4, 1974.

Morris I. Jaffe, Wynne, Jaffe & Tinsley, Dallas, for appellants.

H. Louis Nichols, Saner, Jack, Sallinger & Nichols, Jack D. Eades, Clark, West, Keller, Sanders & Ginsberg, Dallas, for appellees.

GUITTARD, Justice.

This appeal concerns the validity of an ordinance of the City of Dallas changing the zoning of approximately thirty-five acres of land from an ordinary residential district to a planned development district for single-family attached dwellings. The suit was filed by neighboring homeowners against Frank LaCoke, the original applicant for the zoning change, and First National Development Company, which subsequently acquired the property and proposed to develop it. Both plaintiffs and defendants filed motions for summary judgment. The trial court overruled plaintiffs' motion and granted defendants' on the ground that the ordinance was shown to be valid as a matter of law. Plaintiffs contend on this appeal that the ordinance is arbitrary and unreasonable as a matter of law and, alternatively, that fact issues are raised in several respects.

## THE ORDINANCES

The summary-judgment proof presented by defendants in support of their motion includes certified copies of the Comprehensive Zoning Ordinance of the City of Dallas, the amending ordinance now in question, and an extensive record of proceedings before the City Plan Commission and the City Council. The Comprehensive Zoning Ordinance, enacted in 1965, divides the city into zoning districts for which permitted uses are listed. One of these is a "planned development district." The ordinance provides that the City Council, after public hearing and on recommendation of the City Plan Commission, may by ordinance authorize the creation of a "planned development district" on sites of five acres or more to accommodate various types of

development and combinations of developments and that such ordinance shall specify the standards for area and spacing of buildings, site coverage, access, open space, public or private streets or alleys, and the like. The ordinance contains this further statement:

> In order to provide flexibility in the planning and development of projects with combinations of uses or of specific physical designs such as . . . housing developments or any similar developments, a PD, Planned Development District is provided. . . . The purposes of the PD, Planned Development District are to achieve flexibility and variety in the physical development pattern of the City, to encourage a more efficient use of open space and to encourage the appropriate use of land.

Such a "planned development district" was provided for the thirty-five acres of land in question by the amending ordinance under attack in this suit. The conditions governing the development are stated in twenty numbered paragraphs. Use of the land is permitted for single-family attached dwellings, private community center, private recreational club or area, and accessory uses. All development is required to be in accordance with a development plan referred to in the ordinance. Requirements are made concerning building setbacks, maximum coverage by buildings, minimums for width, depth and area of lots, limitations on height of buildings, and requirements for streets, parking areas, screening, utilities, fire lanes, and common open spaces. A property owners' association is required for maintenance of open areas and other common facilities, and no more than two recreation or service buildings are allowed.

## EVIDENCE BEFORE COMMISSION AND COUNCIL

We consider first plaintiffs' contention stated in their second point of error that the trial court erred in granting

defendants' motion for summary judgment because no evidence was introduced before the City Plan Commission or the City Council to support a change in zoning. Plaintiffs assume that an amendment to a zoning ordinance is subject to attack on the ground that the Commission did not hear sufficient evidence on which to base its recommendation and that the Council did not hear sufficient evidence on which to base its determination that the zoning should be changed. The assumption seems to be based on Bliss v. City of Fort Worth, 288 S.W.2d 558 (Tex.Civ.App.—Fort Worth 1956, writ ref'd n. r. e.), but that case did not decide the point, since it held only that the defendants, who sought to establish validity of a zoning change by showing on motion for summary judgment that the Council gave it due consideration, failed to show by their affidavits the evidence the Council actually heard. We do not assume that the ordinance must be based on evidence before the Commission and the Council because the city's power to make and amend zoning regulations is a legislative power delegated to the local legislative body by Tex.Rev.Civ.Stat.Ann. arts. 1011a–1011j (Vernon·1963) and the hearing required by article 1011d is legislative rather than judicial in character. Lawton v. City of Austin, 404 S.W.2d 648 (Tex.Civ.App.—Austin 1966, writ ref'd n. r. e.); Krimendahl v. Common Council of City of Noblesville, 256 Ind. 191, 267 N.E. 547 (1971); and cf. Ball v. Jones, 272 Ala. 305, 132 So.2d 120 (1961). Article 1011d provides for a public hearing "at which parties in interest and citizens shall have an opportunity to be heard," and requires publication of notice of such hearing, but it does not require that the evidence at such hearing be sufficient to support the legislative determination. After all citizens who wish to speak have had an opportunity to do so, the City Council, like any other legislative body, may act on its own knowledge of the community and its own appraisal of the public welfare. A court has no authority to interfere unless it finds that the order is clearly unreasonable and arbitrary. The court must consider all the circumstances, not merely the evidence before the Council, and determine as a substantive matter whether reasonable minds may differ as to whether the particular zoning regulation has a substantial relationship to the public health, safety, morals or general welfare. If the evidence before the court reveals an issuable fact in this respect the restriction must stand as a valid exercise of the city's police power. City of Waxahachie v. Watkins, 154 Tex. 206, 275 S.W.2d 477, 481 (1955).

Even if an attack could be made on the ground of lack of evidence before the Plan Commission and the City Council, such an attack could not succeed here because the summary-judgment proof shows ample evidence before both bodies to support the change in zoning. The record contains a transcript of the evidence before the City Plan Commission and shows that substantially the same evidence was presented to the City Council. The applicant Frank LaCoke appeared before both the Commission and the Council. He stated that he had been a builder and developer of residential and commercial properties in the North Dallas area for twenty-one years. He explained that the purpose of the change was to permit development of the thirty-five acres of land for single-family attached homes, with approximately eleven acres of green belts, parks and recreational areas, and that the quality of construction would be custom homes selling for $36,000 to $52,000, which he said was compatible with the price range of existing homes in the area. In his opinion, this type of development would represent the highest and best use of the land and would offer home ownership combined with a highly desirable way of life for leisure-oriented home buyers. He said that the projected development was similar to successful and well-accepted planned developments of single-family homes in California, and he presented picture slides showing such a development in California. He explained further that the homes would be built for

sale only and that by clustering not more than six homes together and building each on a small lot, typically thirty or thirty-five feet by one hundred feet, only forty-seven percent of the area would be used for home sites and fifty-three percent would be for streets, connected green belts, and park areas. The common areas and the exterior of each house would be maintained by a homeowners' association operated by a board of directors elected by the homeowners. The association would employ a full-time manager, who would contract the work out on a yearly basis. Each owner would be required by state law to contribute his share of the expenses of upkeep of the common areas and the exterior of his home. His family and guests would have use of all recreational facilities, which might be prohibitive in cost to own on an individual basis. The recreational facilities would include a clubhouse with meeting rooms, health club, adult and teenage activity rooms, and would also include swimming pools, tennis courts, and childrens' play areas. In LaCoke's opinion, many families would prefer to live in such a development where they enjoy security, minimal maintenance, proximity of neighbors, and club facilities without abandoning the traditional pride, prestige, and permanency of home ownership.

At the hearings before both the Plan Commission and the Council, opponents of the zoning change were represented by Mr. Morris Jaffe, now counsel for plaintiffs. Their principal objection, as stated by Mr. Jaffe, was that the proposed planned development would bring increased density of population and heavier traffic on the streets of the Melshire Estates addition, where plaintiffs have their homes. He pointed out that under existing residential zoning only seventy to seventy-five homes would be permitted on the thirty-five acres of land in question, but that the proposed planned development would permit two hundred and fifty homes in the same area. Individual homeowners also appeared before the Commission and stated their opposition on the ground of increased density of population and resulting heavy traffic, particularly on Nuestra Drive, which runs along the east boundary of the land in question and through Melshire Estates.

In rebuttal, LaCoke stated that Nuestra Drive was designed as a secondary arterial street and that it would also extend north and connect with other major thoroughfares so that traffic from the planned development district would also move in other directions. Mr. Tahu, a member of the City's planning staff, explained to the Commission how traffic could circulate through the area and onto nearby thoroughfares. At the close of the hearing on July 1, 1971, Mrs. Harrison, one of the members of the Commission, stated that the Commission was aware that "this is the coming type of housing for single-family," but she observed that the Traffic Control Department needed more time to study the matter. On her motion the application was taken under advisement. At the Commission's next meeting on August 5, 1971, the Commission unanimously voted to recommend approval of the plan as modified, subject to certain enumerated conditions.

The proposed zoning change, as recommended by the City Plan Commission, was regularly set for hearing before the City Council on September 13, 1971. The Council had before it the Commission's report and recommendation and also a staff recommendation as follows:

This development for single family owned dwellings with built-in open area and facilities, is compatible with existing single family residential land uses to south and west. Remaining land to north is for apartment, duplex, or office development. Traffic Control Department study of density and traffic generated has indicated the street system and related uses, such as school facility, will not be adversely affected. Development plan has been reviewed by city departments and approved.

The minutes of this meeting show that applicant LaCoke spoke in favor of the proposed zoning change and that Mr. Jaffe and several others spoke against it. After all had been given an opportunity to be heard, the Council took the matter under advisement. On October 11, the Council took the matter up again and voted unanimously to grant the request for zoning change subject to conditions as recommended by the City Plan Commission with the additional condition of deletion of direct street access from the area in question to Nuestra Drive. This deletion eliminated direct vehicular access between the proposed development and the Melshire Estates addition.

Plaintiffs argue that this evidence does not support the zoning change because it does not show how the proposed development would affect the other property in the vicinity. They insist that LaCoke's statement concerning a project in California did not establish that a similar development would be appropriate in this area, and they argue that he did not discuss how the surrounding areas would be protected, how traffic would be handled, or how the surrounding property would be affected or benefited. Consequently, they say, no debatable issue was presented before the City Council as to whether the proposed change would "promote health and the general welfare," or "encourag[e] the most appropriate use of land," as provided in article 1011c.

We do not agree. We hold that the evidence before the Commission and also before the Council raised at least an issuable controversy within the discretion of the legislative body. The material facts concerning the proposed development were presented. No more specific evidence of the effects of this development on surrounding property was required. Any such testimony would necessarily have been conclusory in nature, and the members of the Council could draw their own conclusions from the evidence before them. In particular, the Council could have concluded that

with rapidly increasing population and a diminishing supply of undeveloped land, the "general welfare" of the community and "the most appropriate use of land," as those terms are used in article 1011c, would be better served in this instance by a planned development district allowing greater population density than a more traditional residential subdivision. It could also have found that the change would be likely to achieve the purposes of such a planned development district as stated in the Comprehensive Zoning Ordinance, particularly "flexibility and variety in the physical development pattern of the city" and "a more efficient use of open space." These issues were at least debatable, and, consequently, the fact that the change might be detrimental to some private interests, such as those of plaintiffs, is not material. City of Waxahachie v. Watkins, 154 Tex. 206, 275 S.W.2d 477, 481 (1955). The balancing of such opposing interests is a function typically within the discretion of the legislative body.

Moreover, the record here shows that the interests of other property owners were not ignored. LaCoke's proposal was studied by the Traffic Control Department, whose recommendations were received and considered. Direct vehicular access between the planned development and Nuestra Drive was eliminated by the Council, evidently in response to plaintiffs' complaints concerning the anticipated increase of traffic on that street. The evidence before the Commission and that before the Council affirmatively shows that neither of those bodies acted unreasonably, arbitrarily, or without regard to the evidence before them.

## OTHER GROUNDS OF ATTACK

Under their first and third points of error plaintiffs contend that invalidity of the challenged amendment to the zoning ordinance has been shown in several particulars, or, at least, that fact questions concerning such invalidity have been shown. We have considered each of the grounds

alleged and overrule them for the reasons now to be stated.

### (1) Signatures of owners

Plaintiffs alleged that when LaCoke filed his application for rezoning he was not the owner of the property as required by the Comprehensive Zoning Ordinance, which provides that an application for amendment of the Ordinance must "bear the signature of the owners of all property within the area of request." The application in question is signed by La-Coke, who describes himself as "prospective purchaser" and names "Hill-Elliott and Mrs. Wiley" as owners. Attached to the affidavit in support of the motion for summary judgment are sworn copies of contracts of sale from these owners to LaCoke as trustee, both of which provide that they are conditioned upon securing satisfactory zoning. Written statements in the Plan Commission's file dated before July 1, 1971, the date of the Commission's hearing, and signed by Hill-Elliott, Inc. and Pearl Wiley, show their approval of the proposed zoning change proposed by LaCoke. This evidence shows as a matter of law substantial compliance with the requirement that the application be signed by owners of the property. The evident purpose of that requirement is to provide evidence that the owners have actually approved the change. Plaintiffs, who own property outside the planned development district, are not in a position to show prejudice from failure of the owners to sign the actual application. We hold that this substantial compliance is sufficient and that failure of the application itself to bear the signatures of the owners is a mere irregularity which does not affect the validity of the ordinance without a showing of prejudice. Baccus v. City of Dallas, 450 S.W.2d 389 (Tex.Civ.App.—Dallas 1970, writ ref'd n. r. e., 454 S.W.2d 391); Chesson v. Zoning Commission of City of Bridgeport, 157 Conn. 520, 254 A.2d 864 (1969); Beall v. Montgomery County Council, 240 Md. 77, 212 A.2d 751 (1965); 1 R. Anderson,

American Law of Zoning §§ 4.06, 4.07 (1968). Cf. Hart v. Arganese, 82 Ariz. 380, 313 P.2d 756 (1957), and Hallenborg v. Town Clerk, 275 N.E.2d 525 (Mass.1971).

### (2) Filing of development plan

On similar grounds we hold that validity of the ordinance is not affected by failure of the application to have attached a "development plan" as required by the Comprehensive Zoning Ordinance. Although such a plan is not physically attached to the application as it appears in this record, all the information that it would have imparted appears to have been before the Zoning Commissioner, the Traffic Control Department, the Plan Commission, and the City Council. Plaintiffs make no contention that failure to attach the plan to the application hindered them in making full presentation of their opposition, as was the case in Wallace v. Daniel, 409 S.W.2d 184 (Tex.Civ.App.—Tyler 1966, writ ref'd n. r. e.). We hold that substantial compliance and absence of prejudice are shown as a matter of law.

### (3) Voting procedure

Plaintiffs also alleged that the Council followed an improper voting procedure in that it failed to conduct a proper public hearing in connection with enactment of the amending ordinance. This contention is likewise overruled. Plaintiffs concede that the hearing on September 13, 1971, was a proper hearing on due notice. They point out, however, that since article 1011e requires a vote of three-fourths of the membership of the Council to approve a zoning change, a vote taken on September 13 on adoption of the change would have failed because two members indicated that they were opposed and two were absent, leaving only seven of the eleven members who might have voted in favor. They argue that they were deprived of a "public hearing" because the Council closed the hearing on September 13, but took no vote then on the merits of the proposal, and the

final vote on October 11 approving the change was taken without further notice and included the votes of two members who did not attend the previous hearing and had no knowledge about the case so far as the record shows. This argument is without merit. Article 1011d does not require the Council to act at the same meeting at which the interested parties are heard, but only that no zoning restriction or change "shall become effective until after a public hearing in relation thereto, at which parties in interest and citizens shall have an opportunity to be heard," and that at least fifteen days notice of such hearing shall be published. Notice is required of the "public hearing," not of the meeting at which the Council acts.

■ Plaintiffs rely on Truman v. Irwin, 488 S.W.2d 907 (Tex.Civ.App.—Fort Worth 1972, no writ), which we distinguish on the ground that in that case after an initial hearing and an insufficient vote, subsequent "public hearings" were held without publication of a new notice. Since the initial vote was adverse, the opponents of the change were without notice that the matter might be again taken up at a subsequent hearing at which additional witnesses might be heard. In the present case there was no subsequent "public hearing" in the sense of an opportunity for interested parties to make their views known to the Council. On September 13 the Council "officially closed" the hearing for that purpose and took the matter under advisement. We hold that the statute does not prohibit such deferred consideration.

We also hold that closing of the hearing to further testimony did not violate the requirement of Tex.Rev.Civ.Stat.Ann. art. 6252–17 (Vernon Supp.1973) that the meetings of governmental bodies be "open to the public." This law does not mean that all such meetings must be "open" in the sense that persons other than members are free to speak. Plaintiffs do not suggest that the public was excluded from any meeting at which the proposed zoning change was considered.

We do not reach the question of whether the two members who were absent from the hearing on September 13 were disqualified to vote on approval of the zoning change on October 11 and on final passage of the ordinance on November 8, since the minutes show that even without counting their votes the required three-fourths majority was obtained on both occasions.

### (4) *Misrepresentations concerning development*

Finally, plaintiffs attack the ordinance on the ground that its enactment was based on representations by defendant LaCoke that turned out to be inaccurate. In this connection they point out that the officers of defendant First National Development Corporation testified by deposition that they were not familiar with the California development described by LaCoke and were not planning a clubhouse, sauna bath, or other facilities as represented by LaCoke.

■■ We see no reason why the property must be developed exactly as originally contemplated so long as the requirements of the ordinance are met. The record shows that modifications in La-Coke's plan were made by the Plan Commission and also by the Council, and plaintiffs do not allege that the present development plan would vary from the plan referred to in the ordinance or that it would fail to meet any of the conditions which the ordinance specifies for the planned development district. Even if First National's development would violate the ordinance, such a violation would not render the ordinance invalid. We do not consider whether plaintiffs may have a right to some type of relief for violation of the ordinance, since that question has not been presented to us.

### CONCLUSION

For the reasons stated we also overrule plaintiffs' fourth point of error asserting that the trial court erred in overruling their motion for summary judgment, which urges that the ordinance is invalid as a

matter of law. We conclude that the summary-judgment evidence shows as a matter of law that the City Council did not act arbitrarily or unreasonably in changing the zoning of the land in question and that no genuine issue of material fact exists with respect to any of the grounds of attack urged by plaintiffs. Consequently, the trial court correctly rendered summary judgment sustaining the ordinance.

Affirmed.