**CITY OF PHARR, Petitioner,**

v.

**E. A. TIPPITT, Respondent.**

No. B–9657.

Supreme Court of Texas.

May 13, 1981.

Rehearing Denied June 17, 1981.

William E. York, McAllen, for petitioner.

Jones and Lewis, John Lewis, McAllen, for respondent.

POPE, Justice.

E. A. Tippitt and fourteen other landowners filed suit against the City of Pharr, Mayfair Minerals, Inc., and Urban Housing Associates seeking a judgment declaring a zoning ordinance invalid. The district court upheld the ordinance, but the court of civil appeals nullified it. 600 S.W.2d 951. We reverse the court of civil appeals judgment and affirm that of the trial court.

Mayfair Minerals, Inc. is the owner of 10.1 acres of land which the City of Pharr rezoned from R-1, single-family residence use to R-3, multi-family residence use. Urban Housing Associates, the developer, made the application for change of the single-family classification so that it could build fifty family units consisting of duplexes and quadruplexes. The Planning and Zoning Commission rejected its staff's recommendation that the zoning request be approved; but the City Council, by a four to one vote, enacted an ordinance which rezoned the property. After the district court upheld the validity of the zoning ordinance, Tippitt was the only person who appealed from that judgment. Tippitt's single point of error, which point was sustained by the court of civil appeals, was that the City acted arbitrarily because the amendatory ordinance was spot zoning that was not warranted by any change in conditions in the area.

The land in question is a rectangular 10.1-acre tract. It is on the west side of a larger 60-acre tract. The 60-acre tract and additional large expanses of land to the south and southeast are vacant farmlands. The lands were zoned in 1974 for single-family residences. The tract in question is about two blocks east of Highway 281, a major highway that runs from north to south toward Mexico. The land along the highway is rapidly developing as a commercial strip by reason of a proposed new bridge that will cross the Rio Grande River into Mexico. Sam Houston Street is a major traffic artery that runs from west to east. The tract in question is south of and separated from Sam Houston Street by a 2.6-acre tract of land known as the Aycock tract. Moving clockwise from the north around the 10.1-acre tract, the Aycock tract is zoned for single-family residences. Farther north of there, on the north side of Sam Houston, there are many city blocks of land that were zoned for multiple-family residences. That area, however, was built as single-family residences. The land on the east, southeast, south, and southwest are undeveloped farmlands, all zoned for single-family residences. Bordering the 10.1-acre tract on the west is Richmond Heights Subdivision, which has been developed as single-family residences on the north end, but is not yet developed toward the south. Three hundred feet to the northeast of the tract, but south of Sam Houston, there is an area that is zoned for multiple housing. Two hundred feet to the west of the 10.1-acre tract is a small area that is zoned for industrial use.

Zoning is an exercise of a municipality's legislative powers. *Thompson v. City of Palestine*, 510 S.W.2d 579 (Tex.1974); Arts. 1011a, 1011b, 1011c, 1011d, 1011e.[1] The validity of an amendment to City of Pharr's comprehensive zoning ordinance presents a question of law, not fact. In making its determination, courts are governed by the

1. All statutory references are to Texas Revised Civil Statutes Annotated unless otherwise indicated.

rule stated in *Hunt v. City of San Antonio*, 462 S.W.2d 536, 539 (Tex.1971): "If reasonable minds may differ as to whether or not a particular zoning ordinance has a substantial relationship to the public health, safety, morals or general welfare, no clear abuse of discretion is shown and the ordinance must stand as a valid exercise of the city's police power." *See also City of University Park v. Benners*, 485 S.W.2d 773 (Tex.1972). We wrote in *City of Fort Worth v. Johnson*, 388 S.W.2d 400, 402 (Tex.1964), that "a zoning ordinance, duly adopted pursuant to Arts. 1011a–1011k, is presumed to be valid and the burden is on the one seeking to prevent its enforcement, whether generally or as to particular property, to prove that the ordinance is arbitrary or unreasonable in that it bears no substantial relationship to the health, safety, morals or general welfare of the community." *See Thompson v. City of Palestine, supra; City of University Park v. Benners, supra; City of Bellaire v. Lamkin*, 159 Tex. 141, 317 S.W.2d 43 (1958); *City of Waxahachie v. Watkins*, 154 Tex. 206, 275 S.W.2d 477 (1955).

The burden on the party attacking the municipal legislative action is a heavy one. *Thompson v. City of Palestine, supra*, at 581–82; *City of El Paso v. Donohue*, 163 Tex. 160, 352 S.W.2d 713 (1962); *City of Dallas v. Lively*, 161 S.W.2d 895 (Tex.Civ. App.—Dallas 1942, writ ref'd). As expressed in *Weaver v. Ham*, 149 Tex. 309, 232 S.W.2d 704 (1950):

> The City had the power to enact the basic zoning ordinance, and to amend it, if a public necessity demanded it. While the presumption would be that the enactment of the amendatory ordinance was valid, that presumption disappears when the facts show and it was determined by the court that the City acted arbitrarily, unreasonably, and abused its discretion; that the ordinance is discriminatory and violates the rights of petitioners under the basic ordinance, and does not bear any substantial relation to the public health, safety, morals or general welfare; that it "constitutes unjustifiable spot zoning"; and that the ordinance is void.

These general rules for review of zoning ordinances have often been stated, but there has been little discussion of the actual legal criteria or standards against which legislative action should be tested. It has been suggested that such a statement would help to restrain arbitrary, capricious and unreasonable actions by city legislative bodies; improve the quality of the legislation; assist in eliminating *ad hoc* decisions, and focus the evidence from interested parties upon the real issues.[2] We call attention to some of the important criteria:

First: A comprehensive zoning ordinance is law that binds the municipal legislative body itself. Art. 1011c. The legislative body does not, on each rezoning hearing, redetermine as an original matter, the city's policy of comprehensive zoning. The law demands that the approved zoning plan should be respected and not altered for the special benefit of the landowner when the change will cause substantial detriment to the surrounding lands or serve no substantial public purpose. 1 R. Anderson, American Law of Zoning § 5.04 at 240 (1968). The duty to obey the existing law

---

2. Because of the lack of standards for rezoning decisions, the exercise of pressure by . . . groups increases the likelihood that zoning bodies will be influenced by special interests rather than by the facts and circumstances bearing upon the merits of a rezoning request. Standards usually have the effect of making all of the parties concerned—the zoning body, applicant, and neighborhood opposition—concentrate more on the facts relating to the standards rather than on collateral matters. Harris, *Rezoning—Should It Be a Legislative or Judicial Function?*, 31 Baylor L.Rev. 409, 424 (1979).
*See also* Comment, *Municipal Corporations—Zoning—Spot Zoning Ordinances and Their Validity*, 46 Oregon L.Rev. 323 (1967); Comment, *Spot Zoning and Comprehensive Plan*, 10 Syracuse L.Rev. 303 (1959); Note, *Municipal Corporations—Spot Zoning—Amendment of Zoning Ordinance*, 33 Texas L.Rev. 763 (1955); Note, *Municipal Corporations—Amendment of Zoning Ordinances—Spot Zoning*, 29 Texas L.Rev. 689 (1951); Annot., *Zoning: Creation by Statute or Ordinance of Restricted Residence Districts from Which Business Buildings or Multiple Residences Are Excluded*, 117 A.L.R. 1117 (1938); Feld, *Supreme Court's Views as to Constitutionality of Residential Zoning Restrictions*, 52 L.Ed.2d 863 (1978).

forbids municipal actions that disregard not only the pre-established zoning ordinance, but also long-range master plans and maps that have been adopted by ordinance. 1 R. Anderson, *supra* § 5.13 at 267.

■ The adoption of a comprehensive zoning ordinance does not, however, exhaust the city's powers to amend the ordinance as long as the action is not arbitrary, capricious and unreasonable. Art. 1011e. *City of University Park v. Benners, supra.*

Second: The nature and degree of an adverse impact upon neighboring lands is important. Lots that are rezoned in a way that is substantially inconsistent with the zoning of the surrounding area, whether more or less restrictive, are likely to be invalid. *See Barrington v. City of Sherman,* 155 S.W.2d 1008 (Tex.Civ.App.—Dallas 1941, writ ref'd w. o. m.). For example, a rezoning from a residential use to an industrial use may have a highly deleterious effect upon the surrounding residential lands. *City of Waxahachie, supra; City of McAllen v. Morris,* 217 S.W.2d 875 (Tex.Civ. App.—San Antonio 1948, writ ref'd); *Skinner v. Reed,* 265 S.W.2d 850 (Tex.Civ.App.— Eastland 1954, no writ); 1 R. Anderson, *supra* § 5.08 at 259 (1968); 1 N. Williams, American Land Planning Law § 27.03 at 563 (1974).

■ Third: The suitability or unsuitability of the tract for use as presently zoned is a factor. Art. 1011c. The size, shape and location of a lot may render a tract unusable or even confiscatory as zoned. An example of this is found in *City of Waxahachie v. Watkins,* 154 Tex. 206, 275 S.W.2d 477 (1955), in which we approved the rezoning of a residential lot for local retail use, because the lot was surrounded by a de facto business area. *See also, City of West University Place v. Ellis,* 134 Tex. 222, 134 S.W.2d 1038 (1940). This factor, like the others, must often be weighed in relation to the other standards, and instances can exist in which the use for which land is zoned may be rezoned upon proof of a real public need or substantially changed conditions in the neighborhood. *See Harris, Rezoning— Should It Be a Legislative or Judicial Function?,* 31 Baylor L.Rev. 409, 424–25 (1979).

■ Fourth: The amendatory ordinance must bear a substantial relationship to the public health, safety, morals or general welfare or protect and preserve historical and cultural places and areas. Arts. 1011a, 1011c. *Weaver v. Ham, supra;* 2 E. Yokley, Zoning Law and Practice § 13–6 at 243 (1978). The rezoning ordinance may be justified, however, if a substantial public need exists, and this is so even if the private owner of the tract will also benefit. *City of Waxahachie v. Watkins, supra; Edge v. City of Bellaire,* 200 S.W.2d 224, 227 (Tex. Civ.App.—Galveston 1947, writ ref'd); *Thompson v. City of Palestine, supra; Hunt v. City of San Antonio, supra; Weaver v. Ham, supra.* 6 R. Powell, Powell on Real Property §§ 871.1–871.1(4) (1979).

■ Mr. Tippitt's attack upon the amendatory ordinance in this case is that it is spot zoning. The term, "spot zoning," is used in Texas and most states to connote an unacceptable amendatory ordinance that singles out a small tract for treatment that differs from that accorded similar surrounding land without proof of changes in conditions. Mr. Tippitt's present complaint of spot zoning invokes mainly inquiries about the second and third criteria stated above. Spot zoning is regarded as a preferential treatment which defeats a pre-established comprehensive plan. *Thompson v. City of Palestine,* 510 S.W.2d 579, 582 (Tex.1974). It is piecemeal zoning, the antithesis of planned zoning. 2 E. Yokley, Zoning Law and Practice §§ 13–1 through 13–6 (1978).

Spot zoning has uniformly been denied when there is a substantial adverse impact upon the surrounding land. The size of a rezoned tract in relation to the affected neighboring lands has been said by some authorities to be the most significant consideration in rezoning. 1 R. Anderson, *supra,* § 5.07 at 252; 82 Am.Jur.2d, *Zoning and Planning,* §§ 76, 77, 78 at 514–520 (1976).

Amendatory ordinances which have rezoned a single city lot when there have been no intervening changes or other saving

characteristic, have almost always been voided in Texas. *See Hunt v. City of San Antonio*, 462 S.W.2d 536 (Tex.1971), (2 city lots); *Weaver v. Ham*, 149 Tex. 309, 232 S.W.2d 704 (1950), (3 city lots); *Davis v. Nolte*, 231 S.W.2d 471 (Tex.Civ.App.—Austin 1950, writ ref'd n. r. e.), (2 city block lots); *Harmon v. City of Dallas*, 229 S.W.2d 825 (Tex.Civ.App.—Dallas 1950, writ ref'd n. r. e.), (1 city lot); *Barrington v. City of Sherman*, 155 S.W.2d 1008 (Tex.Civ.App.—Dallas 1941, writ ref'd w. o. m.), (1 city lot). *See also* 1 N. Williams, American Land Planning Law § 27.03 at 563 (1974); 1 R. Anderson, *supra* § 5.08 at 2.56.

Proof that a small tract is unsuitable for use as zoned or that there have been substantial changes in the neighborhood have justified some amendatory ordinances. Here, too, the size, shape and characteristics of the tract have been determinative factors in upholding the amendments. *Waxahachie v. Watkins, supra*, (one-half acre); *Bernard v. City of Bedford*, 593 S.W.2d 809 (Tex.Civ.App.—Fort Worth 1980, writ ref'd n. r. e.), (3.5 acres); *Midway Protective League v. City of Dallas*, 552 S.W.2d 170 (Tex.Civ.App.—Texarkana 1977, writ ref'd n. r. e.), (7.98 acres); *McWhorter v. City of Winnsboro*, 525 S.W.2d 701 (Tex.Civ.App.—Tyler 1975, writ ref'd n. r. e.), (5.29-acre extension of a business zone); *Simons Land Co. v. City of Dallas*, 507 S.W.2d 828 (Tex. Civ.App.—Waco 1974), *motion for reh. den.*, 510 S.W.2d 32 (1974, no writ), (90 acres out of a 100-acre tract); *Skinner v. Reed*, 265 S.W.2d 850 (Tex.Civ.App.—Eastland 1954, no writ), (12 acres). On the other hand, an amendatory ordinance covering a 4.1-acre tract was invalidated in *Thompson v. City of Palestine, supra*. *See* 1 R. Anderson, *supra* § 5.07 at 253–54, for a study of size as a factor in spot zoning cases.

 Amendatory zoning ordinances should be judicially tested against the same criteria that govern the action of the municipal legislative body. In this case, the 10.1-acre tract was not, as urged by the developer who made the application, an interim or automatic R-1 zoning following annexation. The tract had been previously comprehensively zoned, along with vast areas reaching south and southeast to the city limits after study, notice, and hearing. The zoning ordinance had classified lands of the city into districts known as residential, single-family (R-1); residential, two-family (R-2); residential, multi-family (R-3); residential, mobile home parks (R-MH); residential, mobile home subdivision (R-MHS); residential, townhouse subdivision (R-TH); general commercial (C), and industrial (M). *See* Art. 1011b.

The impact of the amendatory R-3 zoning upon the neighborhood, according to some witnesses who lived west of the rezoned tract, would depress the values of their R-1 district. According to other testimony, the new development would enhance values of the entire southeast section of Pharr, and the existing homes in Richmond Heights would be protected by the city's requirement for a conditional permit which would compel the city's prior analysis of the design before development. The new development would require the backyards of the existing residences in Richmond Heights to back upon the backyards of the buildings in the rezoned tract. Most of the traffic from the rezoned tract would be directed to the east and north away from Richmond Heights. The new housing district would have its own internal streets and off-street parking.

The number of potential structures would not be substantially increased. Zoning for single-family dwellings would permit as many as forty-four family units, whereas the rezoning for multiple-housing (R-3) would permit fifty family units. There was evidence that the impact upon the surrounding area would be slight and even beneficial.

We do not regard the ordinance as spot zoning. The ten-acre tract is located in an undeveloped farming area. Large expanses of rural lands are located to the east, south and southeast, the direction which the town must grow. To hold that the undeveloped land cannot be used for anything other than single-family residences (R-1) would mean, for all practical purposes, that there can be

no more multiple housing in Pharr within its present city limits, since there is almost no presently undeveloped area which is available for R-3 housing. The size of this tract is large enough for planning as a self-contained orderly development which can in advance provide for the direction and the flow of traffic and assure a careful development of necessary public utilities. The development will not cause that measure of disharmony that occurs when there is a rezoning ordinance that permits a use that affects lands or tracts that are already developed. This is not an instance of an unplanned or piecemeal zoning of an isolated lot or small tract.

There is also evidence that rezoning would benefit and promote the general welfare of the community. The City of Pharr has a great need for multiple housing, the population has markedly increased since 1974, and there are only three small areas in Pharr that are presently zoned for multiple housing (R-3) which are not fully developed. The mayor testified that the need for multi-family housing will continue to grow. The City of Pharr, from the data included in the minutes of the zoning hearing, has 703 acres zoned for residential purposes of all kinds. Only 49 acres are actually used for multiple housing (R-3), and nine acres are actually used for duplexes (R-2). To relieve the City of Pharr's housing and utility needs, the City had agreed with the Housing and Urban Development Department to provide more space for multiple housing (R-3) construction. A block grant to the City of $3,000,000 had been made which included sums to provide needed extensions of sewer and water lines and the construction of a water reservoir. From the record it does not appear that the one complaining of the rezoning ordinance discharged his burden to prove that the City of Pharr acted arbitrarily, capriciously or unreasonably.

The judgment of the court of civil appeals is reversed and the judgment of the district court upholding the ordinance rezoning the tract in question is affirmed.

McGEE, J., notes his dissent.