Reggie TEER, et al., Appellants,

v.

Wayne B. DUDDLESTON, et
al., Appellees.

No. C2933.

Court of Appeals of Texas,
Houston (14 Dist.).

June 10, 1982.

Rehearing Denied July 15, 1982.

Robert L. Burns, Sears & Burns, Houston, for appellants.

Steven C. Oaks, William A. Sherwood, Butler, Binion, Rice, Cook & Knapp, Larry W. Schenk, Olson & Olson, Houston, for appellees.

Before MILLER, MORSE and JAMES, JJ.

JAMES, Justice.

The original opinion is withdrawn and the following opinion is substituted in its place.

This is an appeal from the granting of a summary judgment declaring certain ordinances of the City of Bellaire (hereafter "the City") valid and ordering that Plaintiffs, Reggie Teer and Andy Hunzicker (hereafter "appellants"), take nothing as against Defendants, Wayne B. Duddleston, H-R-D-37, Ltd., and the City. We refer to Mr. Duddleston and H-R-D-37, Ltd. as "appellees." The City did not file a brief in support of the judgment.

Although appellants bring forward nine points of error, we find this case presents only three main questions. First, was the summary judgment appealed from final so as to vest this court with jurisdiction over the appeal? Second, was the summary judgment proof sufficient to support the judgment? Third, are the ordinances under attack valid as a matter of law? We answer all three questions in the affirmative and accordingly affirm the judgment of the trial court.

Appellants sought two items of relief in the trial court: (1) a declaratory judgment decreeing that certain ordinances of the City are void and (2) an injunction barring enforcement of said ordinances. The basis of appellants' suit was to prevent the improvement and development of a tract of land situated near their residences. This tract, approximately thirty-eight (38) acres in size, is known as the Marian tract. Appellees submitted to the City a proposed building and site plan for the development of a "planned development district" which was authorized by former Chapter 24 of the Code of Ordinances of the City. Appellees, owners of the land, plan to develop the tract which is bounded by Fournace Place, Avenue B, Bissonnet Street, and Interstate Highway 610. Appellant Teer's home abuts on and is across Fournace Place from the Marian tract and appellant Hunzicker's home abuts on and is across Avenue B from such tract.

On April 24, 1972, the Bellaire City Council passed Ordinance No. 1842 which provided for a "planned development district" as one of eighteen enumerated zoning districts. These planned development districts could be created by one of two methods: "(1) by approval of an application as an amendment to the Zoning Ordinance or (2) by designation of a Planned Development District on the map and in the ordinance at the time of the original enactment of a comprehensive revision of the Zoning Ordinance."

Ordinance No. 1842 established Planned Development-2 through Planned Development-13. It provided that Planned Development-3 could combine uses for the O (office) and LR (light retail) districts. Ordinance No. 1842, which was subsequently amended, is the basis of former Chapter 24. According to a schedule of uses in § 24–85 through § 24–96 of former Chapter 24, uses permitted in the O and LR districts included office buildings, theaters, restaurants and hotels. Section 24–186 of former Chapter 24 also provided that area, density, coverage, floor area ratio, yard, height, parking and off-street loading regulations for Planned Development-3 should comply with the minimum standards established in the O and LR districts. Since the development proposed by appellees did not exactly conform to the density, yard, height, and other provisions originally established by former Chapter 24 for Planned Development-3, appellees applied for an amendment to the planned development provisions of former Chapter 24. Thereafter, on March 17, 1980, Ordinance No. 80–018 was enacted which amended the basic conditions and regulations in former Chapter 24 applicable to Planned Development-3, approved the

building and site plans of appellees, and set out certain conditions and requirements to be met in developing the Marian tract.

On April 23, 1980, the City Council enacted new Chapter 24. This new Chapter 24 provides for a different zoning methodology with respect to planned developments. Rather than indicating certain areas on the zoning map as planned development districts and establishing basic conditions for their development, the new Chapter 24 provides that a planned development may be established in any district, except as delineated, by compliance with certain restrictions and limitations and by resort to the amendatory procedures of new Chapter 24. Since planned development districts as such have been abolished and new districts created, the Marian tract is now encompassed within an area denominated the Loop 610 District. Provision is made in new Chapter 24 for two different types of planned developments within the Loop 610 District, namely, "Office Plaza Hotel," and "Residential Office Plaza." Uses allowable within the new Loop 610 District include residential dwellings, office buildings, restaurants, theaters, parks and retail sales and service establishments. Ordinance No. 80–018, approving the building and site plans of Planned Development-3, is incorporated in and adopted as § 24–802 of Article VIII of new Chapter 24.

Prior to the enactment of new Chapter 24 the City had authorized the development of a variety of planned development districts in addition to Planned Development-3. The City Council approved the building and site plans for all of these planned developments and they have been developed in substantial compliance with the ordinances providing for each development.

Appellants brought suit shortly after the enactment of new Chapter 24. Appellees followed with a motion for summary judgment. The City did not file such a motion. However, the trial court's judgment purported to adjudicate appellants' rights as against the City since the judgment provides that appellants "do have and recover nothing of, from and against Defendants, City of Bellaire, . . . , that Defendants, City of Bellaire . . . , be and they are hereby discharged; [and] that the above-referenced action be, . . . , dismissed with prejudice; . . . ." Throughout this entire litigation, the City has remained passive, having only filed an original answer and a response to appellees' interrogatories.

Appellants now assert that the trial court's judgment is interlocutory and thus not appealable because "[it] does not dispose of all the parties in the case and a severance was not ordered." This is the basis of appellants' motion to dismiss the appeal for want of jurisdiction previously filed with this Court and their points of error 1 and 2. Upon hearing oral arguments by both sides at the hearing on the motion, we denied that motion and deferred a written decision on the question of jurisdiction until formal submission of the case on appeal.

## JURISDICTION

In *North East Independent School District v. Aldridge,* 400 S.W.2d 893 (Tex.1966), the Texas Supreme Court held as follows:

When a judgment, not intrinsically interlocutory in character, is rendered and entered in a case regularly set for a conventional trial on the merits, no order for a separate trial of issues having been entered pursuant to Rule 174, Texas Rules of Civil Procedure, it will be presumed for appeal purposes that the Court intended to, and did, dispose of all parties legally before it and of all issues made by the pleadings between such parties.

400 S.W.2d at 897, 898.

In the instant case, the judgment recites that "there is no genuine issue of any material fact regarding the validity of the ordinances of Defendant, City of Bellaire. . . ." Appellants' reliance on *Pan American Petroleum Corp. v. Texas Pacific Coal & Oil Co.,* 159 Tex. 550, 324 S.W.2d 200 (1959) is thus misplaced. There the trial court neither expressly nor by implication disposed of all issues and parties before it. The trial court in *Pan American* had entered a summary judgment against certain defendants

and no severance was ordered as to that phase of the case. The Texas Supreme Court held that a summary judgment which does not dispose of all parties and issues in the pending suit is interlocutory and not appealable unless a severance of that phase of the case is ordered. We held in *Stockton v. Summers,* 504 S.W.2d 637, 638 (Tex.Civ. App.—Houston [14th Dist.] 1974) that the rule of *Pan American* was not changed by *Aldridge* because "*[Aldridge]* states a test for determining when a judgment 'not intrinsically interlocutory' may be presumed to have disposed of parties or issues not explicitly mentioned."

 In the case before us, the judgment is not "intrinsically interlocutory." It not only expressly disposed of all parties but it also disposed of the only issue which was before it—the validity of the ordinances. Nothing remained for further disposition by the trial court. The trial court's adjudication was a judgment *in rem* because it declared and determined the status of a thing, to-wit, the validity of the ordinances. *Allied Van Lines, Inc. v. Central Forwarding, Inc.,* 535 S.W.2d 412 (Tex.Civ. App.—Waco 1976, writ ref'd n.r.e.). In *Allied Van Lines,* the court held that a judgment determining and declaring the status of the Specialized Motor Carrier Certificate was a judgment *in rem* which was binding on all parties who have an interest in the suit since the form of the judgment adjudicated matters of public interest. We reaffirm the denial of appellants' motion to dismiss the appeal and overrule their points of error 1 and 2.

## THE VALIDITY OF THE ORDINANCES

In their points of error 7, 8 and 9, appellants give fourteen reasons why the ordinances under attack are void. The main thrusts of these reasons are as follows: The Zoning Enabling Act, Tex.Rev.Civ.Stat. Ann. art. 1011 *et seq.* (Vernon 1963), does not vest a City Council with power to zone for planned development districts, the provisions for a planned development district do not comply with the comprehensive zoning plan, Ordinance No. 80–018 is not legislation, but a contract providing for the bargaining away and selling of police power, and the classification of the Marian tract as a planned development district is spot zoning. All of appellants' contentions are without merit.

Throughout these proceedings and in their brief, appellants do not acknowledge that there is a standard to which the trial court must adhere in determining the validity of a zoning ordinance. This standard was decided in *City of Waxahachie v. Watkins,* 154 Tex. 206, 275 S.W.2d 477 (1955) and followed in many decisions appearing thereafter. See *Thompson v. City of Palestine,* 510 S.W.2d 579 (Tex.1974); *Hunt v. City of San Antonio,* 462 S.W.2d 536 (Tex. 1971); *Charlestown Homeowners Association, Inc. v. LaCoke,* 507 S.W.2d 876 (Tex. Civ.App.—Dallas 1974, no writ). In *City of Waxahachie,* the Texas Supreme Court first pointed out that final determination of the validity of an ordinance must turn on the circumstances of each case and the character of the regulations involved. The court continued:

Since it is an exercise of the legislative power of the city's council, the ordinance must be presumed to be valid.

The courts cannot interfere unless it appears that the ordinance represents a *clear abuse* of municipal discretion. And the 'extraordinary burden' rests on one attacking the ordinance 'to show that no *conclusive,* or even *controversial* or issuable, facts or conditions existed which would authorize the governing board of the municipality to exercise the discretion confided to it.' [emphasis in original] [Citations omitted]

The presumption of validity accorded original comprehensive zoning applies as well to an amendatory ordinance. [Citation omitted]. In either case the courts have no authority to interfere unless the change is clearly unreasonable and arbitrary. [Citations omitted]

If reasonable minds may differ as to whether or not a particular zoning restriction has a substantial relationship to the public health, safety, morals or gener-

al welfare, no clear abuse of discretion is shown and the restriction must stand as a valid exercise of the city's police power. [Citation omitted] Otherwise expressed by the court in the case just cited, if the issue of validity is fairly debatable courts will not interfere.

... [I]f there is an issuable fact as to whether the ordinance makes for the good of the community, the fact that it may be detrimental to some private interest is not material. [Citation omitted]

275 S.W.2d at 480, 481.

■ Although *City of Waxahachie* established the standard for a conventional trial on the merits, the standard in a summary judgment case wherein the movant seeks to uphold the ordinance only shifts this burden from the opponent of the ordinance to the proponent to establish affirmatively that conditions either conclusively support passage of the ordinance or make that action debatable or issuable. *Baccus v. City of Dallas,* 450 S.W.2d 389 (Tex.Civ.App.—Dallas), *writ ref'd n.r.e. per curiam,* 454 S.W.2d 391 (Tex.1970); *Moore v. City of Carrollton,* 517 S.W.2d 367 (Tex.Civ.App.—Dallas 1974, no writ).

■ The record in the instant case is replete with evidence showing that the City Council's action in passing the ordinances was debatable. For instance, on pages three through five of Ordinance No. 80–018, it is recited that on December 11, 1979, the City Council and the Planning and Zoning Commission held a joint public hearing at which time all interested persons were given an opportunity to speak in connection with the proposed zoning amendments affecting the Marian tract. The minutes of the City Council reflect that other meetings were held giving everyone an opportunity to voice his support or opposition to the development. The City Council made findings wherein they determined that there would be overriding benefits to residents of the City by the adoption of Ordinance No. 80–018. They also adopted some findings of the Planning and Zoning Commission which show benefits the development would create including, among others, replacement of 2,540 feet of sanitary sewer mains, improvement of the water distribution system, construction of sidewalks, installation of traffic control devices on "safe school" routes adjacent to the site, development of surface water control, and development of 10.2 acres as a passive open space for the use of the public. All of this would be developed at a cost to appellees and at no cost to the City. Finally, the last of these findings provides in part as follows: "[T]he development would produce revenue in the amount of $1,169,122 and would require direct city services costing $145,009. Thus, the project would produce what might be called a $1,024,113 revenue surplus."

The evidence shows a conscientious, methodical, and concerned evaluation exercised by the City Council in deciding to enact Ordinance No. 80–018 and the subsequent new Chapter 24. The factors presented to and weighed by the City Council supply a reasonable basis for a difference of opinion concerning the advantages and disadvantages of enacting the ordinances. In applying the evidence presented to the City Council to the "issuable facts" test stated above, we find that appellees met their burden in establishing the validity of the ordinances.

■ Appellants assert that Art. 1011b of the Zoning Enabling Act does not vest a City Council with power to zone for planned development districts. They also assert that the provision for such a development for the Marian tract does not comply with the comprehensive zoning plan as required by Art. 1011c. We disagree. Article 1011b of the Zoning Enabling Act provides as follows:

Art. 1011b. Districts

For any or all of said purposes the local legislative body may divide the municipality into districts of such number, shape, and area as may be deemed best suited to carry out the purposes of this Act; and within such districts it may regulate and restrict the erection, construction, reconstruction, alteration, repair, or use of buildings, structures, or

land. All such regulations shall be uniform for each class or kind of building throughout each district, but the regulations in one district may differ from those in other districts.

A provision for planned development districts, including the provision for such a district for the Marian tract, is an example of the creation by the City Council of a particular district in a manner best suited to carry out the purposes of the Act.

The concept of planned development districts has been approved by the courts of this state. In *Charlestown Homeowners Association, Inc. v. LaCoke*, 507 S.W.2d 876 (Tex.Civ.App.—Dallas 1974, writ ref'd n.r. e.), certain neighboring homeowners filed suit against several parties including one who had applied to change the zoning classification of a thirty-five (35) acre tract of land from an ordinary residential district to a planned development district. There, both parties moved for a summary judgment but the court granted the defendants' motion on the ground the ordinance was shown to be valid as a matter of law. The court upheld the ordinance and its provision for planned development districts because it found the evidence before the City Plan Commission and the City Council raised at least an issuable controversy within the discretion of the legislative body. The court found that the City Council, in drawing its own conclusion from the evidence before them, could have concluded that the "general welfare" of the community and "the most appropriate use of land," as those terms are used in Art. 1011c, would be better served by a planned development district allowing greater population density than a more traditional residential subdivision. The court also stated that the Council could have found that the change would be likely to achieve the purposes of such a planned development district as stated in the City's Comprehensive Zoning Ordinance.

Although appellants assert that a planned development district does not comply with the comprehensive zoning plan, they do not point to a collateral document which establishes a comprehensive plan. This is because the ordinances themselves describe the plan proposed by the City Council. See *Bernard v. City of Bedford*, 593 S.W.2d 809 (Tex.Civ.App.—Fort Worth 1980, writ ref'd n.r.e.), wherein it was held that Art. 1011c requires "that zoning ordinances shall be made *in accordance* with a comprehensive plan," but "there is no requirement that a single comprehensive ordinance be passed to constitute the comprehensive plan." 593 S.W.2d at 812. Here the zoning map of the City, referred to and attached to former Chapter 24, specifically delineates certain areas as planned development districts and indicates the uses allowed in each district. The record reflects that throughout the consideration of these changes by the City Council, a plan for orderly development of the Marian tract was followed. We find that Ordinance No. 80–018 was enacted in compliance with that plan.

■ Appellants contend that Ordinance No. 80–018 is not legislation but a contract providing for the bargaining away and selling of police power. This contention is based on the fact that the ordinance would not be effective until the execution by Mr. Duddleston of an "Acceptance Agreement." This "Acceptance Agreement" simply provides that the owners of the tract will be bound by the terms and conditions of the ordinances and in the event any of these terms are breached, the City Council is vested with the sole and exclusive power to interpret the ordinance and to resolve the question. The inclusion of this "Acceptance Agreement" into the ordinance indicates a preservation and not a bargaining away of the City's police power. This is because appellees are bound to develop the land in accordance with the guidelines established by the City Council. Since the developer of a planned development must apply to the City Council for an amendment to the ordinance, it is only logical that the Council would require the developer to agree to improve the property in the manner it approves. An example of this is appellees' promise to dedicate 10.2 acres of the tract as a passive open space for the use of the

public. The evidence does not indicate that this "Acceptance Agreement" renders the ordinance void for any impermissible use of the City's legislative power.

■ Finally, appellants assert that the classification of the Marian tract as a planned development district is spot zoning. In *City of Pharr v. Tippitt,* 616 S.W.2d 173 (Tex.1981), the Texas Supreme Court stated that the term spot zoning is used in Texas "to connote an unacceptable amendatory ordinance that singles out a small tract for treatment that differs from that accorded similar surrounding land without proof of changes in conditions." 616 S.W.2d at 177. The court continued: "Spot zoning is regarded as a preferential treatment which defeats a preestablished comprehensive plan. *Thompson v. City of Palestine,* 510 S.W.2d 579, 582 (Tex.1974). It is piecemeal zoning, the antithesis of planned zoning." [Citation omitted] Some determinative factors in upholding the amendment are the size, shape and characteristics of the tract. In *City of Pharr,* the plaintiffs contended that a 10.1 acre tract had been spot zoned. The Supreme Court in reversing the Court of Appeals held:

> The size of this tract is large enough for planning as a self-contained orderly development which can in advance provide for the direction and the flow of traffic and assure a careful development of necessary public utilities. The development will not cause that measure of disharmony that occurs when there is a rezoning ordinance that permits a use that affects lands or tracts that are already developed. This is not an instance of an unplanned or piecemeal zoning of an isolated lot or small tract.

616 S.W.2d at 179.

The Marian tract is almost four times the size of the tract in *City of Pharr.* A commentator on the law of zoning states as follows: "In determining whether commercial use is appropriate the court will consider the predominance of commercial uses in the neighborhood, the proximity of a busy throughfare ..., and the commercial zoning of nearby land." 1 R. ANDERSON, AMERICAN LAW OF ZONING, § 5.12 (2d ed. 1968). In the instant case, the facts before the City Council, including the location of the tract in relation to Loop 610, fully justified the Council's treatment of the tract in a way different from the treatment afforded appellants' homes. In the words of the Supreme Court, this is not an instance of piecemeal zoning of an isolated lot or small tract. Appellants' contention that the enactment of the ordinance is an example of spot zoning is without merit.

### SUMMARY JUDGMENT PROOF

Appellants make the following complaints with respect to the summary judgment proof: no supporting affidavits were attached to the motion, the copies of official documents were not certified, and not properly before the court at the summary judgment hearing, and no copies of the site plans and the separated use tax agreement to be executed by Mr. Duddleston and the City were included in the summary judgment proof.

■ It is well settled that a motion for summary judgment need not be supported by affidavits. Tex.R.Civ.P. 166–A. The court may consider depositions, answers to requests for admissions, interrogatories and certified copies of documents without the necessity of a supporting affidavit by a witness. *Citizens State Bank of Dickinson v. Shapiro,* 575 S.W.2d 375 (Tex.Civ.App.—Tyler 1978, writ ref'd n.r.e.); 4 R. McDonald, Texas Civil Practice § 17.26.5 (rev. 1971).

■ Appellants' complaints with respect to the documentary evidence are twofold. First, appellants contend the copies of the documents are not certified because the certification by the city clerk for each document provides that the "foregoing" is a true and correct copy of the official record but the document follows rather than precedes the statement. The order in which the documents were placed in the folder in relation to the statement of certification does not render the copies uncertified. The statement correctly refers to each ordinance

by number thus eliminating any ambiguity as to whether a particular document was or was not certified. Appellants, relying on *State v. Easley,* 404 S.W.2d 296 (Tex.1966), also assert that because the documents were not *attached* to the motion or supporting affidavits, they do not constitute proper summary judgment proof. This is because the trial court may not receive evidence, either oral or documentary, at the hearing on the motion for summary judgment. *Citizens, supra; Baebel v. River Oaks Bank & Trust Co.* 498 S.W.2d 461 (Tex.Civ.App.— Houston [14th Dist.] 1973, no writ). The court in *Citizens* held at 383 as follows: "... [I]n *Easley,* the documentary evidence referred to [in the court's statement that 'extrinsic' evidence was heard], including papers filed in another proceeding, was introduced before the trial court independent of and apart from other matters on file and the motion and affidavits attached thereto." In the instant case, the evidence before the court in support of the motion was not introduced "independent of and apart from" other matters on file. In their motion for summary judgment, appellees referred to three exhibits "previously filed with the court" consisting of true and correct certified copies of the ordinances in question. Although these exhibits were filed by the City, appellants acknowledged in their answers to interrogatories and requests for admissions that said exhibits were true and correct copies of the ordinances.

■ It cannot be denied that the record in the instant case is voluminous. The ordinances comprise over six-hundred pages. It was not necessary for appellees to incur the expense of requesting certified copies of these documents just so they could once again be filed with the court and attached to the motion for summary judgment. Rule 166–A of the Texas Rules of Civil Procedure does not intend such a result. The ordinances were thus properly before the court and constituted a vital part of the summary judgment proof.

■ Appellants contend the summary judgment granted in favor of appellees was not supported by sufficient proof because copies of the building and site plans were not attached. The basis of this contention is that the ordinance adopts the site plans as exhibits but the record only contains papers which provide the words "Site Plans" in the center of the page with a date, but no actual site plans are attached. In accordance with *Charlestown Homeowners Association, Inc. v. LaCoke supra,* we find that such copies were not necessary.

In *LaCoke,* the court addressed the question of sufficiency of summary judgment proof. There, appellants alleged that the proof was insufficient because a copy of the "development plan" as required by the comprehensive zoning ordinance was not attached to the certified copy of the ordinance filed with the trial court. The court stated:

Although such a plan is not physically attached to the application as it appears in this record, all the information that it would have imparted appears to have been before the Zoning Commissioner, the Traffic Control Department, the Plan Commission, and the City Council. Plaintiffs make no contention that failure to attach the plan to the application hindered them in making full presentation of their opposition, .... We hold that substantial compliance and absence of prejudice are shown as a matter of law.

507 S.W.2d at 882.

The record before this court reflects that the Planning and Zoning Commission, the City Council and the citizens of Bellaire were fully apprised of the building and site plan. Further, the evidence shows that all interested parties extensively studied, deliberated and debated the specifics of the plan. This is evident from the statements made by the homeowners as reflected in the minutes of the public hearings and the fact that the City Council did not approve the building and site plan as submitted but required changes be made to it before the enactment of Ordinance No. 80–018. We hold that attachment of copies of the building and site plans was not necessary in establishing the summary judgment proof.

Contrary to appellants' assertion, the terms of the proposed Separated Use Tax Agreement are set forth in paragraph 21 of Ordinance No. 80–018 which we have held was properly before the court at the hearing on the motion for summary judgment. Consequently, appellants' contention that such agreement was a necessary but omitted part of the summary judgment proof is without merit.

Appellants raise two remaining problems regarding the summary judgment proof. The first concerns the "Acceptance Agreement" previously discussed, which renders effective Ordinance No. 80–018 upon its execution. This "Acceptance Agreement" was to be attached to the ordinance as Exhibit H. Appellants complain that because the Agreement was not executed until April 22, 1980, it could not have been attached to an ordinance passed on March 17, 1980. We see no problem in the later execution of this Agreement by Mr. Duddleston as he was the one to be ultimately bound by its provisions. We are only concerned with the fact that the copy of the Agreement as placed in the record before this court was not attached to the ordinance as Exhibit H. In light of our holding with respect to the validity of the ordinances, we find this omission was not such as to render improper the granting of the summary judgment.

Second, appellants contend that the summary judgment proof was insufficient because a number of "Whereas" clauses allegedly a part of Ordinance No. 80–018 are missing from the summary judgment proof. This court has not been apprised of the content or the significance of these clauses. In light of the standard to be followed by the trial court in determining whether the ordinances are valid, we find that the omission of these clauses likewise does not render the summary judgment proof insufficient.

Appellants assert that the trial court erred in ordering that certain records be deemed to have been duly and timely filed as of May 11, 1981 for purposes of the summary judgment. Appellees had filed a motion for leave to have the records deemed filed wherein they informed the court of the clerk's failure to file mark the records on December 1, 1980, the day they were tendered to the court. In their reply, appellants objected on the basis that the certified records contain hearsay. However, in this appeal appellants do not reurge this objection. They simply object on the basis that the documents in Volumes XI–B through Volume XI–F contain no file mark.

Volumes XI–B through XI–F of the transcript contain the certified copies of the records of the City. These are copies of the three ordinances in question. At the top of the page bearing the City Clerk's certification of the record is typed the following: CERTIFIED COPIES of RECORDS OF DEFENDANT CITY OF BELLAIRE. FILED: MAY 11, 1981, RAY HARDY, District Clerk, Harris County, Texas, By T. Bolster, Deputy. We find that this "file-mark" was sufficient to determine the date of filing of all three ordinances. It was not necessary that each ordinance contain this "file-mark" since they were all filed at the same time and for the same purpose.

Appellants complain also of the trial court's order requiring them to answer interrogatories "in the manner directed by the court" and in failing to grant their motion for protective order on appellees' interrogatories. This order required appellants to indicate whether they claim or have evidence of any procedural or substantive defect or irregularity in former Chapter 24, Ordinance No. 80–018 and new Chapter 24. It allowed appellants to state that they have no such claim or evidence if that were the case. The order also required appellants to specify in detail each and every defect which they claim renders "void, voidable, invalid, ineffective, null, inoperative, or otherwise without full force and effect" the ordinances in question. We do not find that this order required appellants to make any disclosures which were in any way prejudicial to them. It simply required appellants to indicate their basic contentions in the lawsuit. Without these answers, appellees would be at a loss in determining how to defend appellants' allegations.

It is well settled that discovery matters rest within the clear discretion of the trial court. *Martinez v. Rutledge,* 592 S.W.2d 398 (Tex.Civ.App.—Dallas 1979, no writ). The standard of appellate review is whether the court's ruling was "arbitrary or unreasonable." *Landry v. Travelers Insurance Co.,* 458 S.W.2d 649 (Tex.1970). We find that the trial court acted within its discretion in requiring appellants to answer the interrogatories propounded by appellees. Accordingly, no abuse was shown in the trial court's failure to grant appellants' motion for protective order.

Appellants' points of error 1 through 10 are overruled and the judgment of the trial court is affirmed.