**Affirmance in Part, Reversal and Remand in Part, and Opinion Filed August 14, 2023**



In The
### Court of Appeals
### Fifth District of Texas at Dallas

No. 05-22-00263-CV

**MICHAEL BEAL, Appellant**
**V.**
**PRUVIT VENTURES, INC., Appellee**

**On Appeal from the 429th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 429-06415-2019**

## MEMORANDUM OPINION

Before Justices Partida-Kipness, Reichek, and Miskel
Opinion by Justice Miskel

Michael Beal appeals from a traditional summary judgment disposing of his claims against Pruvit Ventures, Inc., and from the denial of his no evidence motions for summary judgment on Pruvit's claims. In his first issue, Beal submits that the trial court erred by disposing of his claims for quantum meruit and breach of contract, through which he sought to recover unpaid sales commissions. For the most part, we disagree. An express contract barred Beal's claim for quantum meruit. Further, Pruvit showed as a matter of law that it did not breach the contract and that Beal voluntarily terminated the contract, thereby forfeiting any right to future

commissions. A fact issue exists only as to Beal's contract claim for the commissions he earned in October 2019, the month before Pruvit suspended him and he terminated the contract.

In his second issue, Beal contends that the trial court erred by denying his no evidence motions for summary judgment attacking Pruvit's claims. However, Pruvit later nonsuited all its claims, which renders any appeal concerning the merits of the no evidence motions moot.

In his third issue, Beal contests the trial court's evidentiary rulings. To the extent that the trial court overruled Beal's objections to the evidence Pruvit filed in response to the no evidence motions, we again note that Pruvit's nonsuit mooted the no evidence motions, which in turn mooted any challenge to the associated evidence. Further, the trial court was mostly correct to sustain Pruvit's objections to Beal's evidence, and to whatever limited extent it erred, any error was harmless.

In his fourth issue, Beal argues that Pruvit did not prove it was entitled to judgment as a matter of law on his claims for attorney's fees. To the limited extent that Beal pursues attorney's fees in connection with his contract claim for the October 2019 commissions, we agree. We disagree in all other respects.

We reverse the portion of the summary judgment relating to Beal's counterclaim for breach of contract with respect to the October 2019 commissions and his request for attorney's fees based on that counterclaim. We affirm the

summary judgment in all other respects. The case is remanded for further proceedings consistent with this Court's opinion and judgment.

## I. BACKGROUND

Pruvit is a multilevel marketing company. Beal was an independent sales representative for Pruvit, known as a "promoter." Beal was successful, and he built a network of many customers, which provided him with recurring sales commissions that yielded around a million dollars of residual income each year.

Beal's contract with Pruvit prevented him from marketing competing products and businesses, but it allowed him to promote other businesses and products so long as they were not in competition with Pruvit. The agreement also barred Beal from soliciting Pruvit promoters or customers to join other multilevel marketing businesses while the agreement was in effect or for six months afterward unless he had personally enrolled the promoter or customer in Pruvit.

In spring 2019, Pruvit investigated Beal for violating these restrictions by promoting a brand called Globallee. It temporarily suspended Beal's access to his online account for Pruvit, which effectively cut off his ability to act as a promoter during the suspension. Pruvit restored his account access after, on March 18, 2019, Beal signed a letter in which he acknowledged his mistakes, disavowed the competitor, and conceded that "Pruvit may terminate my Pruvit Promoter account" if he was found to be in continuing violation of his obligations.

On October 31, 2019, Pruvit again suspended Beal's account access for violating the terms of the contract by soliciting Pruvit promoters to enroll in other multilevel marketing ventures. Beal denied the accusation and demanded proof that he had done so. But while the investigation was pending, on November 7, 2019, Beal emailed Pruvit that "Effective as of today [I] resign my position as a rep in [P]ruvit." Pruvit warned him that he would forfeit his right to commissions if he opted to resign. There is no evidence that Beal reconsidered the decision before this litigation arose. Instead, Beal posted multiple videos on social media in which he discussed his decision to resign from Pruvit in order to pursue a more lucrative opportunity, as well as his request that his remaining commissions be donated to charity.

Pruvit touched off the litigation when, on November 15, 2019, it sued Beal and other former promoters for breach of contract, tortious interference with existing contract and prospective relations, and injunctive remedies, among other relief. Pruvit accused Beal and the other defendants of breaching the prohibition against soliciting Pruvit promoters to join other ventures. In Beal's answer, he pleaded for attorney's fees incurred in defending the suit. Pruvit eventually settled with or nonsuited the other defendants, leaving Beal as the only defendant.

Meanwhile, Beal filed a counterpetition that, as amended, pleaded claims for breach of contract and quantum meruit, through which he hoped to collect millions

in unpaid commissions dating back to the month before his resignation—October 2019—as well as attorney's fees.

Beal filed a no evidence motion for summary judgment attacking all of Pruvit's claims and objected to the evidence that Pruvit submitted in response. Pruvit moved for traditional summary judgment on all of Beal's claims and objected to the evidence that Beal filed in response.

The trial court denied Beal's no evidence motion. It later overruled Beal's evidentiary objections and sustained Pruvit's evidentiary objections. The trial court also granted Pruvit's traditional motion and ordered that Beal take nothing on his claims.

Beal then filed a second no evidence motion for summary judgment challenging Pruvit's claims. After Pruvit responded, Beal again objected to Pruvit's summary judgment evidence. The trial court reportedly denied the second no evidence motion, though the denial order does not appear in the record.

Regardless, Pruvit then nonsuited all of its claims against Beal without prejudice. Beal timely filed a notice of appeal.

## II.   THE MERITS OF BEAL'S NO EVIDENCE MOTION ARE MOOT

For ease of discussion, we take up Beal's issues out of order. We begin with Beal's second issue, in which he contests the denial of his no evidence motions for summary judgment to dispose of Pruvit's claims. Following the denial of Beal's motions, Pruvit nonsuited all its claims.

The nonsuit presents the question of whether Beal's appeal of the no evidence motions is moot. When a controversy becomes moot, we lack jurisdiction to decide its merits. *Elec. Reliability Council of Tex., Inc. v. Panda Power Generation Infrastructure Fund, LLC*, 619 S.W.3d 628, 634 (Tex. 2021) (combined appeal & orig. proceeding). Because appellate jurisdiction is never presumed, we are obligated to conduct a sua sponte, de novo review of any issues affecting our jurisdiction. *Mireskandari v. Casey*, 636 S.W.3d 727, 732 (Tex. App.—Dallas 2021, pet. denied).

As a general rule, a plaintiff may voluntarily dismiss a case and take a nonsuit at any time before all of the plaintiff's evidence other than rebuttal evidence has been introduced. *Klein v. Hernandez*, 315 S.W.3d 1, 3 (Tex. 2010) (citing TEX. R. CIV. P. 162). When this occurs, the nonsuit typically moots the case or controversy from the moment of its filing or pronouncement in open court. *Id.*

As a caveat to this rule, a party's right to nonsuit cannot be used to disturb a court's judgment on the merits of a claim, such as a partial summary judgment against the nonsuiting party. *Villafani v. Trejo*, 251 S.W.3d 466, 469 (Tex. 2008). "Once a judge announces a decision that adjudicates a claim, that claim is no longer subject to the plaintiff's right to nonsuit." *Hyundai Motor Co. v. Alvarado*, 892 S.W.2d 853, 855 (Tex. 1995).

However, the denial of a motion for summary judgment is not an adjudication on the merits. *Ward v. Prop. Tax Valuation, Inc.*, 847 S.W.2d 298, 301 (Tex. App.—

–6–

Dallas 1992, writ denied). In *Klein*, the Texas Supreme Court held that a nonsuit *before* the summary judgment was denied had the effect of mooting an appeal of the denial. *See* 315 S.W.3d at 2–4. We have applied the same rule where, *after* the denial of a no evidence motion, the nonmovant nonsuits the claims that were the subject of the motion—the exact situation presented in this case. *Petras v. Criswell*, 248 S.W.3d 471, 478–79 (Tex. App.—Dallas 2008, no pet.); *accord Salinas v. Aguilar*, No. 04-11-00260-CV, 2012 WL 848147, at *1 (Tex. App.—San Antonio Mar. 14, 2012, no pet.) (mem. op.).

Because Pruvit nonsuited all its counterclaims after the trial court denied Beal's no evidence motions and before an adjudication on the merits, Beal's arguments concerning the denial of his motion are now moot. We therefore overrule his second issue without addressing its merits.

### III.    THE TRIAL COURT'S EVIDENTIARY RULINGS WERE NOT REVERSIBLE ERROR

We next address Beal's third issue, in which he contests the trial court's rulings on the admissibility of summary judgment evidence.

We review a court's rulings on summary judgment evidence for an abuse of discretion. *Fleming v. Wilson*, 610 S.W.3d 18, 21 (Tex. 2020). A trial court abuses its discretion when it acts without reference to guiding rules and principles to such an extent that its ruling was arbitrary or unreasonable. *Landry's, Inc. v. Animal Legal Def. Fund*, 631 S.W.3d 40, 46 (Tex. 2021).

Beal argues that the trial court erred by overruling his objections to the evidence that Pruvit submitted in response to his no evidence motions for summary judgment. We have determined that the merits of the no evidence motions are moot on appeal, which renders Beal's arguments concerning the evidence filed in response to those motions moot as well. *See also Klein*, 315 S.W.3d at 3; *Cantu v. C & W Ranches, Ltd.*, 631 S.W.3d 434, 441 n.2 (Tex. App.—San Antonio), *review granted, judgment vacated, and remanded by agreement*, No. 21-0704, 2021 WL 10311409 (Tex. Oct. 1, 2021); *Aguilar v. Leland Pennington, Inc.*, No. 02-16-00407-CV, 2017 WL 4172570, at *1 (Tex. App.—Fort Worth Sept. 21, 2017, no pet.) (mem. op.); *Lakeway Reg'l Med. Ctr., LLC v. Lake Travis Transitional LTCH, LLC*, No. 03-15-00025-CV, 2017 WL 672451, at *15 (Tex. App.—Austin Feb. 17, 2017, pet. denied) (mem. op. on reh'g).

Furthermore, Beal did not object to the evidence that Pruvit submitted in support of its traditional motion, nor did he obtain a ruling on the objectionability of this evidence, and thus any error is not preserved. *See* TEX. R. APP. P. 33.1.

Beal next argues that the trial court erred by sustaining Pruvit's objections to the evidence he submitted in response to Pruvit's traditional motion for summary judgment. Pruvit objected to Beal's evidence on multiple grounds.

First, Pruvit objected to certain paragraphs in Beal's affidavit on the basis that they contained legal conclusions that are not competent summary judgment evidence. We agree.

"A conclusory statement is one that does not provide the underlying facts to support the conclusion." *Atmos Energy Corp. v. Paul*, 598 S.W.3d 431, 467 (Tex. App.—Fort Worth 2020, no pet.). "Conclusory statements are not proper summary judgment proof." *Id.*

Many of the challenged paragraphs contained conclusory assertions. In some of the paragraphs, Beal declared that by denying him access to his online account, Pruvit terminated his ability to continue to operate his business, "caused an involuntary resignation," and effectively discharged him in breach of the parties' contract. *See, e.g.*, *Tex. Div.-Tranter, Inc. v. Carrozza*, 876 S.W.2d 312, 314 (Tex. 1994) ("[The plaintiff's] assertion that other employees were wrongfully terminated, if relevant, is also conclusory . . . ."). In another paragraph, he testified that he had never terminated his contract. *See, e.g.*, *Strother v. City of Rockwall*, 358 S.W.3d 462, 472 (Tex. App.—Dallas 2012, no pet.) ("[A]ppellant's conclusory statement regarding the buyers terminating the contract because the property is in the flood plain is not supported by any evidence."). And in still another paragraph, Beal broadly asserted that Pruvit did not comply with the progressive disciplinary provisions in the contract. *See, e.g.*, *Queen v. RBG USA, Inc.*, 495 S.W.3d 316, 327 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) (deeming conclusory an "opinion that [the plaintiff] thought [the defendant] could not terminate him without following the disciplinary and dismissal procedures"). These conclusory statements

are entitled to no weight, and the trial court rightly sustained an objection to their lack of factual substance.

Pruvit also objected that the same paragraphs violated the best evidence rule in that they discussed the terms of Beal's contract with Pruvit. As Pruvit saw matters, the contract spoke for itself, and thus Beal was prohibited from offering any opinion or testimony relating to the document's content.

The best evidence rule provides that "[a]n original writing, recording, or photograph is required in order to prove its content unless these rules or other law provides otherwise." TEX. R. EVID. 1002. We have reason to doubt that a best evidence rule objection that the document "speaks for itself" is valid when the underlying document has already been admitted. *See United States v. Nelson*, 732 F.3d 504, 518 n.4 (5th Cir. 2013) (holding that "opinion testimony of a witness with personal or expert knowledge, helpful and pertaining to a document, is not objectionable on the ground that the document 'speaks for itself'" because the best evidence rule "should not be misunderstood as a 'best evidence' device to exclude otherwise admissible opinion testimony interpreting a writing after it has been introduced into evidence"); 5 FEDERAL EVIDENCE § 10:18 (4th ed.) (suggesting that if the underlying document has already been admitted to prove its content, the concerns of the best evidence rule "are ended"); *see also* 31 FED. PRAC. & PROC. EVID. § 7184 (2d ed.) ("While the best evidence rule applies when evidence is

offered to prove the contents of a writing, recording, or photograph, it is not applicable to evidence offered merely to prove the meaning of those contents.").

Regardless, we need not decide whether the trial court erred in sustaining Pruvit's best evidence objection because, even assuming that the trial court erred, any error was harmless. We will not reverse a trial court's judgment because of an erroneous evidentiary ruling unless the ruling probably caused the rendition of an improper judgment. *Gunn v. McCoy*, 554 S.W.3d 645, 668 (Tex. 2018). If erroneously excluded evidence was crucial to a key issue, the error was likely harmful, but it is not conclusively or per se harmful. *Id.* Typically, the complaining party must show that the judgment turned on the evidence excluded. *Interstate Northborough P'ship v. State*, 66 S.W.3d 213, 220 (Tex. 2001) (op. on reh'g). And ordinarily, we will not reverse a judgment because a trial court erroneously excluded evidence when the evidence in question is cumulative. *Id.*; *Gunn*, 554 S.W.3d at 668.

The excluded evidence does not satisfy this standard. The case did not turn on the noncontroversial content of these paragraphs, most of which simply restated the content of the contract that was already properly included in the summary judgment evidence. Any error in sustaining an objection to this testimony was harmless.

Next, Pruvit objected to an expert report and letter that Beal submitted as summary judgment evidence, contending that both of these documents constituted

hearsay. We agree. Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. TEX. R. EVID. 801(d); *Estate of Finney*, 424 S.W.3d 608, 615 (Tex. App.—Dallas 2013, no pet.). The thrust of the report was to prove the amount of Beal's damages by calculating the profits he expected to lose, discounted to present value. The letter opined that Pruvit breached the parties' contract by suspending Beal's online account. Both the report and the letter entirely consisted of statements by out-of-court declarants for which the only apparent probative value would have been to prove the matters asserted.

Beal authenticated the report if not the letter, but even with respect to the report, authentication "does not remove the report from the ambit of hearsay." *See DeLamar v. Fort Worth Mountain Biker's Ass'n*, No. 02-17-00404-CV, 2019 WL 311517, at *9 (Tex. App.—Fort Worth Jan. 24, 2019, pet. denied) (mem. op.) (citing, *inter alia*, *Petty v. Children's World Learning Ctrs., Inc.*, No. 05-94-00998-CV, 1995 WL 379522, at *5 (Tex. App.—Dallas May 31, 1995, writ denied) (not designated for publication)). Beal does not assert that the report falls within any exclusion or exception to the rule against hearsay. *See id.* (citing TEX. R. EVID. 801(e), 803). The trial court properly sustained Pruvit's objections to these exhibits.

Thus, because (1) any challenge to Pruvit's evidence is moot or unpreserved, (2) the trial court was right to exclude most of Beal's evidence that Pruvit objected

–12–

to, and (3) any error in the exclusion of Beal's remaining evidence was harmless, we overrule Beal's third issue.

## IV. THE TRADITIONAL SUMMARY JUDGMENT DISPOSING OF BEAL'S CLAIMS WAS ONLY PARTIALLY ERRONEOUS

In his first issue, Beal challenges the traditional summary judgment that disposed of his claims for breach of contract and quantum meruit.

### A. Summary Judgment Standard

We review a summary judgment de novo. *Travelers Ins. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). We consider the evidence presented in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could and disregarding evidence contrary to the nonmovant unless reasonable jurors could not. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008). A defendant that conclusively negates at least one essential element of a plaintiff's cause of action is entitled to summary judgment on that claim. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010); *see* TEX. R. CIV. P. 166a(b), (c). Proof is conclusive if reasonable people could not differ in the conclusions to be drawn from it. *Helix Energy Sols. Grp. v. Gold*, 522 S.W.3d 427, 431 (Tex. 2017). "Typically, evidence is conclusive when it concerns physical facts that cannot be denied or when a party admits it is true." *Id.* (internal quotation omitted).

**B.    Pruvit Conclusively Disproved the Contract Claim Regarding Commissions After October 31, 2019**

Beal argues that he created a fact issue for his contract claim that is sufficient to survive summary judgment because he offered evidence that Pruvit breached and constructively terminated the contract, and thus relieved him of any obligation to perform further in order to obtain the commissions.    He contends that Pruvit breached and terminated the contract by suspending him in violation of the contract's disciplinary procedures.    According to Beal, these procedures required Pruvit to adhere to a progressive disciplinary process consisting of four steps: a written warning for a first violation, a second warning and temporary suspension for a second violation, a suspension and temporary forfeiture of commissions for a third violation, and termination only upon a fourth violation.    Beal submits that by suspending him upon what he contends was a first violation, Pruvit excused him from any further performance.    And because his future performance has been excused, Beal apparently reasons that he is entitled to receive commissions under the contract in perpetuity despite the fact that he voluntarily submitted a resignation letter just eight days into his suspension.

For four reasons, we cannot accept this line of reasoning.    First, even assuming for the moment that Beal's interpretation of the contract is correct, Pruvit submitted evidence that the October 2019 suspension did not relate to Beal's "first violation." Rather, Pruvit submitted undisputed proof that Beal was investigated, suspended, and counseled—consistent with the first disciplinary step prescribed in the

contract—for promoting a Pruvit competitor in the spring of 2019. This proof included an affidavit describing Beal's actions and the corresponding disciplinary steps, as well as a letter signed by Beal in which he acknowledged the suspension of his account, disavowed any intention to continue promoting the competitor, and conceded that "Pruvit may terminate my Pruvit Promoter account" if he was found to be in continuing violation of his obligations.

Second, Beal misreads the contract when he posits that it required Pruvit to observe each step in the progressive disciplinary terms in order. The contract expressly provided that while "Pruvit will try to exercise the progressive nature of the discipline policy," it reserved the right to "combine and omit steps depending on the circumstances of each situation and the nature of the violation." As a matter of law, Pruvit did not breach the contract by exercising this right and suspending Beal.

Third, Beal submits that by suspending him, Pruvit effectively and constructively discharged him. However, Beal makes no attempt to connect his situation to the law of constructive discharge, which is usually defined as "an employee's reasonable decision to resign because of unendurable working conditions," and which has no bearing on this case. *Baylor Univ. v. Coley*, 221 S.W.3d 599, 605 (Tex. 2007) (quoting *Pa. State Police v. Suders*, 542 U.S. 129, 141 (2004)).

Beal cites no authority that might support his position that a suspension of his business account for a mere eight days could be deemed a total breach and

termination of the contract. *Cf. Horne Bros., Inc. v. Laird*, 463 F.2d 1268, 1270–71 (D.C. Cir. 1972) (recognizing the possibility that "an action that 'suspends' a contractor and contemplates that he may dangle in suspension for a period of one year or more" might be tantamount to a permanent debarment for due process purposes).

The only reason he cites for calling this state of affairs a termination rather than a suspension is that, in his telling of events, Pruvit's decision to suspend his online business account had a serious impact on his ability to operate as Pruvit promoter. But the distinction between a suspension and a termination of a working relationship is found primarily in the intended character and duration of the withdrawal, not in its financial impact. *See Alba v. Nueces Cnty. Sheriff's Dep't*, 89 S.W.3d 132, 134 (Tex. App.—Corpus Christi–Edinburg 2002, pet. denied). In this context, "suspension" is defined as a "temporary withdrawal or cessation from employment as distinguished from permanent severance accomplished by removal." *Id.* (cleaned up) (quoting *Suspension*, BLACK'S LAW DICTIONARY). The term implies an intent that the withdrawal be temporary. *Id.* By contrast, "termination" is the "end of something in time or existence; conclusion or discontinuance." *Targa Channelview LLC v. Vitol Ams. Corp.*, 653 S.W.3d 330, 336 n.4 (Tex. App.—Houston [14th Dist.] 2022, pet. filed) (quoting *Termination*, BLACK'S LAW DICTIONARY). The term implies intended permanence.

We decline Beal's invitation to blur the distinction between these terms and the business decisions they reflect. Doing so would undercut the hiring party's incentive and opportunity to gather information during a suspension that might salvage the underlying relationship. *See Hudson v. City of Chicago*, 374 F.3d 554, 562 (7th Cir. 2004). Unlike termination, a suspension provides "ample opportunity to invoke discretion later," and a brief abeyance actually benefits the employee or contractor by allowing the hiring party "to obtain more accurate information about the incident that led to the suspension." *Id.* (cleaned up) (quoting *Gilbert v. Homar*, 520 U.S. 924, 934–35 (1997)). We therefore reject Beal's position primarily for textual reasons, but also to preserve contracting parties' business interests and activities served by those contractual terms. *See Endeavor Energy Res., L.P. v. Energen Res. Corp.*, 615 S.W.3d 144, 148 (Tex. 2020).

Pruvit produced conclusive evidence that it handled Beal's case in accordance with their contract, and there was no evidence that Pruvit intended for the move to be permanent. Indeed, there was undisputed evidence that Pruvit had already suspended Beal's account in a similar fashion earlier in the year, but that he had regained access to his account and been reinstated following a brief suspension. This course of performance reinforces a common-sense interpretation of the parties' agreement under which Pruvit's action amounted, as a matter of law, to a suspension rather than a discharge or termination.

Fourth, just a week into the suspension, Beal sent an unequivocal resignation email that stated, "Effective as of today [I] resign my position as a rep in [P]ruvit," accompanied by his name and account username. Soon after, he posted multiple videos on social media discussing how his loss of passion for Pruvit had led his decision to "leave," "walk away," and "resign[]" from the business and ask for any remaining commissions to be donated to a charity for children and how, in the process, he "gave up a seven-figure income" in order to "align" himself with a new business.

Substantial compliance is the appropriate standard when evaluating whether a party complied with a contractual notice condition. *James Constr. Grp., LLC v. Westlake Chem. Corp.*, 650 S.W.3d 392, 405 (Tex. 2022). By stating his unequivocal intent to resign, the date of termination, his account username, and his name, Beal substantially complied as a matter of law with the notice provision in the Pruvit contract concerning voluntary termination. *See, e.g.*, *McBeath v. Estrada Oaks Apts.*, 135 S.W.3d 694, 697 (Tex. App.—Dallas 2003, no pet.); *Charlestown Homeowners Ass'n, Inc. v. LaCoke*, 507 S.W.2d 876, 882 (Tex. App.—Dallas 1974, writ ref'd n.r.e.). Pruvit was entitled to accept Beal's resignation and was not required to insist that Beal comply with further contractual formalities.

By the express terms of the contract, Beal's suspension and then voluntary resignation relieved Pruvit from the obligation to pay Beal any further commissions

–18–

after October 31, 2019.  The contract provided that *following* a voluntary termination such as Beal's, the promoter

> (i) *Shall have no right, title, claim or interest to any commission or bonus*, including Pruvit Bucks, from the sales generated by the Promoter's former organization or any other payments in association with the Promoter's former independent position;
>
> (ii) Effectively waives any and all claims to property rights, if any, or any purported interest in or to the Promoter's former Downline organization;
>
> (iii) *Shall receive commissions and bonuses only for the last full pay period in which he or she was active prior to cancellation, less any amounts withheld during an investigation preceding an involuntary cancellation . . . .*

(emphasis added).  This provision governed—and mostly negated—Beal's right to receive commissions after the agreement was terminated.  Employment contracts usually specify when commissions are earned and payable.  *Amrecorp, Inc. v. Resolution Tr. Corp.*, No. 05-93-01507-CV, 1994 WL 510885, at *7 (Tex. App.—Dallas Sept. 16, 1994, no writ) (not designated for publication).  When a seller agrees to pay sales commissions, the parties are free to condition the obligation to pay commissions however they like.  *Perthuis v. Baylor Miraca Genetics Labs., LLC*, 645 S.W.3d 228, 231 (Tex. 2022).  Parties are free to displace, through the terms of their agreements, the default rules concerning how commissions will be awarded when an agent is terminated—they need only say so, and we will honor their choice.  *Id.* at 237.

Beal emphasizes that under the multilevel marketing contract, no further effort was required on his part to earn residual commissions stemming from other promoters whom he had previously enlisted in Pruvit. But this fact does not override the plain terms of the contract, which conditioned Beal's right to receive future commissions on his continued service to Pruvit and ended any such right upon his voluntary termination. We enforce these conditions as written. As we have twice held in the similar context of recurring commissions on renewals of insurance policies, "There was no absolute right to these renewal commissions. The parties had a perfect right to agree upon the conditions upon which the renewal commissions should depend . . . ." *Bobbitt v. Nat'l Comp. Assocs.*, 597 S.W.2d 28, 29–30 (Tex. App.—Dallas 1980, writ ref'd n.r.e.) (quoting *Stancliff v. Southland Life Ins. Co.*, 172 S.W.2d 521, 522 (Tex. App.—Dallas 1943, no writ), which in turn quoted *Sutherland v. Conn. Mut. Life Ins. Co.*, 149 N.Y.S. 1008, 1012 (N.Y. Sup. Ct. 1914)).

Here, under the terms of the contract, Beal unequivocally forfeited his right to receive any future commissions by voluntarily terminating his relationship with Pruvit. Under the contract's termination provision, he retained the right to receive commissions only "for the last full pay period in which he or she was active prior to cancellation," which in this case was October 2019. Therefore, the trial court was correct to grant summary judgment enforcing this provision and to determine that there was no fact issue as to all future commissions, except for those of the last full pay period of October 2019.

## C. Pruvit Is Not Entitled to Traditional Summary Judgment on the Contract Claim Regarding October 2019 Commissions

The only question that remains with respect to Beal's contract claim is whether the trial court erred to the limited extent that it granted summary judgment as to Beal's claim for commissions for his last full pay period of October 2019.

Pruvit offers multiple reasons why Beal should not be entitled to receive commissions for October 2019. Pruvit contends that Beal cannot collect the October commissions because he did raise any argument concerning these commissions in his summary judgment response.

We disagree. A nonmovant who fails to raise any issues in response to a summary judgment motion may still challenge, on appeal, the legal sufficiency of the grounds presented by the movant. *Weekley Homes, LLC v. Paniagua*, 646 S.W.3d 821, 826 (Tex. 2022). This is because summary judgments must stand or fall on their own merits, and the nonmovant's failure to answer or respond cannot supply by default the summary judgment proof necessary to establish the movant's right to judgment. *Id.* Beal is thus entitled to contest the sufficiency of Pruvit's case for summary judgment on his claim for October commissions regardless of the state of his summary judgment response.

Next, Pruvit maintains that Beal cannot collect commissions for October 2019 because the contract provides that as to the second step of the disciplinary procedures, "During the suspension period, the Promoter waives any and all rights to Pay-Out . . . ." However, the contract also provides that when a suspension is

lifted, "the Promoter will be able to request a Pay-Out." The contract defines "Pay-Out" as the "transferring and disbursement of commission payments or bonuses acquired." Pruvit reasons that because Beal's suspension began on October 31, 2019, and it was not lifted before his termination, he lost the right to have any October commissions transferred to him. Even if Beal lost the right to receive the transfers during the pendency of the investigation and suspension, upon his termination, the contract expressly states that he shall receive commissions and bonuses for the last full pay period, less any amounts withheld during an investigation. Pruvit has not conclusively disproven the existence of a fact issue as to the amount of compensation that might be owed by Pruvit to Beal for the month of October 2019.

Next, Pruvit argues Beal offered no summary judgment evidence that Pruvit failed to pay him a commission or bonus owed prior to October 31, 2019. But the court granted Pruvit's traditional motion for summary judgment. Beal did not have the burden to offer such evidence. A plaintiff responding to a traditional motion for summary judgment has no burden to produce evidence raising a fact issue unless the defendant first conclusively establishes its entitlement to summary judgment. *Draughon v. Johnson*, 631 S.W.3d 81, 96 (Tex. 2021). It was Pruvit's burden to conclusively disprove that there was no genuine issue of material fact as to Beal's claimed entitlement to the October commissions. *See Frost Nat'l Bank*, 315 S.W.3d

at 508. Because Pruvit did not do so, Beal had no responsive burden to create a fact issue.

Pruvit points to Beal's social media videos where stated that he "gave up a seven-figure income business . . . to align myself with a new opportunity," that this new opportunity "obviously had to be pretty damn good for me to leave multiple seven-figure income a year to do this," and that he asked that his Pruvit business "be donated or signed over to a charity," to show that Beal admitted he suffered no damages. To the extent that the videos may be subject to differing interpretations, where a factfinder would need to weigh Beal's demeanor to decide whether these videos amount to puffery or waiver, this is a fact issue. *See Marquis Acquisitions, Inc. v. Steadfast Ins. Co.*, 409 S.W.3d 808, 815 (Tex. App.—Dallas 2013, no pet.).

Pruvit also asserted that it conclusively established two affirmative defenses that should excuse it from paying the October commissions: waiver and quasi-estoppel. As to waiver, Pruvit argues that Beal's termination of the contract excuses Pruvit from any obligation to pay commissions that accrued in October, before the suspension. We disagree.

We cannot accept Pruvit's position that Beal's resignation waived as a matter of law, and there is no fact issue regarding, any entitlement to commissions during his last active pay period. Waiver is the intentional relinquishment of a right actually known or intentional conduct inconsistent with claiming that right. *Ulico Cas. Co. v. Allied Pilots Ass'n*, 262 S.W.3d 773, 778 (Tex. 2008). The elements of waiver

–23–

include (1) an existing right, benefit, or advantage held by a party; (2) the party's actual knowledge of its existence; and (3) the party's actual intent to relinquish the right or intentional conduct inconsistent with the right. *Id.* Pruvit cites no authority for the proposition that simply resigning operates as a waiver as a matter of law of all rights to compensation based on past performance, and we are aware of none. Nothing in the contract's language indicates that the parties intended for a resignation to trigger a sweeping waiver of past performance.[1] Rather, the contract expressly states just the opposite by reserving Beal's right to collect commissions and bonuses through his last full pay period. Pruvit has not proven that no fact issue exists on its affirmative defense that Beal waived his claim to past compensation.

Finally, Pruvit did not establish quasi-estoppel as a matter of law. "Quasi-estoppel precludes a party from asserting, to another's disadvantage, a right inconsistent with a position previously taken." *Teal Trading & Dev., LP v. Champee Springs Ranches Prop. Owners Ass'n*, 593 S.W.3d 324, 337 (Tex. 2020). The doctrine applies when it would be unconscionable to allow a person to maintain a

---

[1]A useful analogy can be made to the rules concerning material breach. When one party to a contract materially breaches, the nonbreaching party must elect to either terminate the contract or treat it as continuing. *C&C Rd. Constr., Inc. v. SAAB Site Contractors, L.P.*, 574 S.W.3d 576, 585 (Tex. App.—El Paso 2019, no pet.) (citing, *inter alia*, *Hanks v. GAB Bus. Servs., Inc.*, 644 S.W.2d 707, 708 (Tex. 1982)). Yet at the same time, even though a material breach will justify terminating the contract, "a material breach will not discharge an obligation of the nonbreaching party that arose before the breach." *Allied Cap. Partners, LP v. Proceed Tech. Res., Inc.*, 313 S.W.3d 460, 465 (Tex. App.—Dallas 2010, no pet.). "In other words, a material breach excuses *future* performance, not *past* performance." *Bartush-Schnitzius Foods Co. v. Cimco Refrigeration, Inc.*, 518 S.W.3d 432, 437 (Tex. 2017). Extending this logic to its natural conclusion, we cannot accept Pruvit's position that termination of the contract would excuse Pruvit from its obligations with respect to past performance.

position inconsistent with one to which he acquiesced, or from which he accepted a benefit. *Id.* Unlike equitable estoppel, quasi-estoppel does not require a showing of a false representation or detrimental reliance. *Forney 921 Lot Dev. Partners I, L.P. v. Paul Taylor Homes, Ltd.*, 349 S.W.3d 258, 268 (Tex. App.—Dallas 2011, pet. denied).

Pruvit offered no evidence as to what benefit Beal might have gained by terminating the contract and losing his primary means of earning a living. Moreover, Pruvit advanced no proof as to why it would be unconscionable to allow him to recover the compensation that he may have earned prior to his resignation by performing under the contract. *See Teal Trading*, 593 S.W.3d at 338.

Pruvit therefore failed to establish its entitlement to summary judgment on Beal's contract claim with respect to the October 2019 commissions.

## D.    An Express Contract Bars the Quantum Meruit Claim

Pruvit also argues that Beal's claim for quantum meruit is barred as a matter of law because an express contract covers the same subject matter. We agree.

"Quantum meruit is an equitable remedy that is based upon the promise implied by law to pay for beneficial services rendered and knowingly accepted." *Hill v. Shamoun & Norman, LLP*, 544 S.W.3d 724, 732 (Tex. 2018) (internal quotation omitted). "The purpose of this common law doctrine is to prevent a party from being unjustly enriched by retaining the benefits of the performance without paying anything in return." *Id.* (cleaned up).

"[W]hen a valid agreement already addresses the matter, recovery under an equitable theory is generally inconsistent with the express agreement." *Excess Underwriters at Lloyd's, London v. Frank's Casing Crew & Rental Tools, Inc.*, 246 S.W.3d 42, 50 (Tex. 2008) (op. on reh'g) (quoting *Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 684 (Tex. 2000)). To recognize an equitable right to reimbursement would require us to rewrite the parties' contract or add to its language. *Id*. "It has long been the law, however, that 'where an adequate and complete remedy at law is provided, our courts, though clothed with equitable jurisdiction, will not grant equitable relief.'" *GRCDallasHomes LLC v. Caldwell*, 619 S.W.3d 301, 308 (Tex. App.—Fort Worth 2021, pet. denied) (quoting, by way of another case, *Rogers v. Daniel Oil & Royalty Co.*, 110 S.W.2d 891, 894 (Tex. 1937)). "When a written contract unambiguously covers the subject matter of the parties' dispute, there is no issue for the jury to decide; the express-contract rule bars recovery in equity as a matter of law." *Id.* (cleaned up). Because an express contract covered Beal's entitlement to commissions from Pruvit products, he is not entitled to pursue a quantum meruit claim concerning those commissions.

E.    **Conclusion**

We sustain Beal's first issue only to the limited extent that he pursues a contract claim for unpaid commissions for the month of October 2019. We overrule his first issue in all other respects.

## V.   ATTORNEY'S FEES

In his fourth issue, Beal contends that the trial court was wrong to grant summary judgment on his various claims for attorney's fees. For the most part, we disagree.

The general rule is that litigants in Texas are responsible for their own attorney's fees. *Ashford Partners, Ltd. v. ECO Res., Inc.*, 401 S.W.3d 35, 41 (Tex. 2012). Under Texas law, a court may award attorney's fees only when specifically authorized by statute or contract. *MBM Fin. Corp. v. Woodlands Operating Co.*, 292 S.W.3d 660, 669 (Tex. 2009). Whether a party is entitled to seek an award of attorneys' fees is a question of law that we review de novo. *Woodhaven Partners, Ltd. v. Shamoun & Norman, L.L.P.*, 422 S.W.3d 821, 846 (Tex. App.—Dallas 2014, no pet.).

First, Beal's answer sought attorney's fees for defending against Pruvit's contract claim only under Chapter 38 of the Texas Civil Practice and Remedies Code.[2] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 38.001(b)(8). "When a party pleads a specific ground for recovery of attorney's fees, the party is limited to that ground and cannot recover attorney's fees on another, unpleaded ground." *Smith v. Deneve*, 285 S.W.3d 904, 916 (Tex. App.—Dallas 2009, no pet.) (cleaned up).

---

[2]Beal concedes, and we agree, that the trial court disposed of his defensive claim for attorney's fees through its summary judgment order when it rendered a take-nothing judgment on all his counterclaims. *See G.R.A.V.I.T.Y. Enters., Inc. v. Reece Supply Co.*, 177 S.W.3d 537, 551 (Tex. App.—Dallas 2005, no pet.) (referring to a defensive claim for attorney's fees as a counterclaim).

However, Beal was ineligible as a matter of law for purely defensive fees under Chapter 38. Chapter 38 establishes "a one-way fee shift" in favor of plaintiffs, such that "a claimant does not risk having to pay the defendant's attorney's fees if the suit is unsuccessful." *1/2 Price Checks Cashed v. United Auto. Ins. Co.*, 344 S.W.3d 378, 383 (Tex. 2011); *see Polansky v. Berenji*, 393 S.W.3d 362, 368 (Tex. App.—Austin 2012, no pet.). Beal pleaded for attorney's fees under Chapter 38 for defending against Pruvit's contract claim, but "Section 38.001 does not provide for attorney's fees in the pure defense of a claim." *Brockie v. Webb*, 244 S.W.3d 905, 910 (Tex. App.—Dallas 2008, pet. denied).

The lone exception we have recognized to this rule applies when "the plaintiff's breach of contract claim and the defendant's counterclaim arise from the same transaction and the same facts required to prosecute the claim are required to defend against the counterclaim," in which case "attorney's fees may be appropriate." *Id.* However, as a matter of law, that exception does not apply here because the bases for both claims were wholly distinct: Beal's contract claim was rooted in Pruvit's failure to pay him sales commissions, whereas Pruvit's claim rested on allegations that Beal breached the agreement by promoting competing products and recruiting other Pruvit promoters to join the competitor. The lack of any overlap between these claims justifies summary judgment under the default rule that Beal may not collect attorney's fees for defending against Pruvit's contract claim. *See id.*

Beal also sought attorney's fees on his own claims, pleading that he should recover fees under "the common law, Texas law, all statutory law and in equity." Interpreting this request under the fair notice standard of pleading, *see Daugherty v. Highland Cap. Mgmt., L.P.*, No. 05-14-01215-CV, 2016 WL 4446158, at *3 (Tex. App.—Dallas Aug. 22, 2016, no pet.) (mem. op.), we construe this broad prayer as "[a] general request for attorney's fees" of the sort that is "sufficient to authorize the award of attorney's fees" in multiple forms, *see Tull v. Tull*, 159 S.W.3d 758, 762 (Tex. App.—Dallas 2005, no pet.). However, as a matter of law, Beal was ineligible to collect attorney's fees on any claim except one narrow subset of his contract claim. *See Woodhaven Partners*, 422 S.W.3d at 846.

First, even assuming for the moment that Beal raised a claim for fees under the fee-shifting provision in his contract with Pruvit, *but see Kreighbaum v. Lester*, No. 05-06-01333-CV, 2007 WL 1829729, at *3 (Tex. App.—Dallas June 27, 2007, no pet.) (mem. op.), the lone fee-shifting provision in the contract plainly did not apply to suits such as this one. Rather, this fee-shifting provision only applied to suits concerning the misuse of Pruvit's confidential information. Beal's contract claim concerned the failure to pay commissions under a separate set of provisions, and it had no connection to Pruvit's confidential information. Assuming that Beal raised such a claim, then, Beal had no entitlement to attorney's fees under the lone fee-shifting provision in the contract.

Second, Beal specifically pleaded his entitlement to attorney's fees in "equity." Again, the controlling American rule provides for attorney's fees only when specifically authorized by statute or contract. *MBM Fin.*, 292 S.W.3d at 669. Beal offers no substantive argument as to why the summary judgment on this claim was error in the absence of any statutory or contractual provision authorizing them, and we perceive none. We deem this argument inadequately briefed. *See* TEX. R. APP. P. 38.1(i).

Finally, Beal pleaded for attorney's fees under any applicable statutory law. The only statutory basis we perceive that might apply is Chapter 38 and its proviso concerning contract claims. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 38.001(b)(8). However, we have determined that the trial court was right to grant summary judgment on all but one month of the sales commissions that were sought through Beal's contract claim. To obtain attorney's fees under section 38.001, a party must (1) prevail on a cause of action for which attorney's fees are recoverable, such as a contract action, and (2) recover damages. *Intercont'l Grp. P'ship v. KB Home Lone Star L.P.*, 295 S.W.3d 650, 653 (Tex. 2009). Because the potential remains that Beal will prevail and recover damages on one aspect of his contract claim that the trial court has yet to address, we reverse and remand the summary judgment on this claim to the extent that the attorney's fees related to Beal's contract claim for the October 2019 commissions. *See Sefzik v. Mady Dev., L.P.*, 231 S.W.3d 456, 466 (Tex. App.— Dallas 2007, no pet.). Beal did not prevail or recover damages on the rest of his

–30–

claims, so we affirm the summary disposition of his claim for attorney's fees in all other respects. *See Dall. Nat'l Ins. Co. v. Calitex Corp.*, 458 S.W.3d 210, 228 (Tex. App.—Dallas 2015, no pet.).

We sustain Beal's fourth issue to the limited extent that he claims attorney's fees under Chapter 38 with respect to his contract claim concerning the October 2019 commission. We otherwise overrule his fourth issue.

## VI. CONCLUSION

We reverse the portion of the trial court's summary judgment that disposes of Beal's counterclaim for breach of contract with respect to commissions for the month of October 2019 and his request for attorney's fees based on that counterclaim. We affirm the trial court's summary judgment in all other respects. The case is remanded for further proceedings consistent with this Court's opinion and judgment.

/Emily Miskel/

220263f.p05

EMILY MISKEL
JUSTICE



## Court of Appeals
## Fifth District of Texas at Dallas
## JUDGMENT

MICHAEL BEAL, Appellant

No. 05-22-00263-CV          V.

PRUVIT VENTURES, INC.,
Appellee

On Appeal from the 429th Judicial
District Court, Collin County, Texas
Trial Court Cause No. 429-06415-
2019.
Opinion delivered by Justice Miskel.
Justices Partida-Kipness and Reichek
participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED** in part and **REVERSED** in part.

We **REVERSE** the portion of the trial court's judgment that disposes of appellant MICHAEL BEAL's counterclaim for breach of contract with respect to commissions for the month of October 2019 and his request for attorney's fees in connection with that breach-of-contract counterclaim.

In all other respects, the trial court's judgment is **AFFIRMED**.

We **REMAND** this cause to the trial court for further proceedings consistent with this opinion.

It is **ORDERED** that appellee PRUVIT VENTURES, INC. recover its costs of this appeal from appellant MICHAEL BEAL.

Judgment entered this 14th day of August 2023.